No. 113,412

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

TERRILL GRABER,
*Appellant*,

v.

DILLON COMPANIES,
*Appellees*.

SYLLABUS BY THE COURT

The term "idiopathic" as used in the Kansas Workers Compensation Act is analyzed and applied.

Appeal from Workers Compensation Board. Opinion filed June 24, 2016. Reversed and remanded with directions.

*Matthew L. Bretz*, of Bretz & Young, L.L.C., of Hutchinson, and *Jan L. Fisher*, of McCullough, Wareheim & LaBunker, of Topeka, for appellant.

*Dallas L. Rakestraw*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, for appellees.

Before STANDRIDGE, P.J., PIERRON, J., and JOHNSON, S.J.

PIERRON, J.: Terrill Graber began working for Jackson's Dairy, a subsidiary of Dillon Companies, Inc. (Dillon's), in Hutchinson, in approximately 2009. He usually worked Monday through Friday 3 p.m. to 11:30 p.m. His main task was to load semi-trucks with a forklift. He was also required to attend periodic safety meetings.

In 1998, Graber underwent a kidney transplant and continued to take anti-rejection medicine. After the transplant, Graber developed diabetes. Graber took insulin and other

1

medication and checked his blood sugar daily. He had never had fainting spells or been in the hospital because of his diabetes. Graber also took medicine for high blood pressure. Graber had never had any complications from his blood pressure medications.

On Sunday, August 21, 2011, Graber attended a mandatory safety meeting at Dillon's Hutchinson offices. The offices were in a separate building about a half block east of Jackson's Dairy. Graber usually did not work on Sunday, so Jackson's Dairy paid him overtime for attending the meeting. The meeting began at 9 a.m. and lasted until approximately 2:30 p.m.

The meeting took place on the second floor of the office building. To reach the second floor, Graber and the other attendees had to climb a flight of stairs. The stairs were concrete and covered with a plastic, diamond-patterned, anti-skid coating. On both sides of the stairs were metal handrails.

Before going to the safety meeting, Graber had a cup and a half of coffee with sweetener, but did not eat. He usually tested his blood sugar in the morning, but he did not do so that morning because he was running late. The meeting provided food for the attendees. Graber had two glazed donuts and a soda for breakfast. He had a sandwich, a bag of chips, and another soda for lunch. The attendees also received three 15-minute breaks throughout the meeting. During each break, Graber went downstairs and outside to smoke a cigarette.

When the meeting ended, Graber walked down the hall and used the restroom. The restroom was about 20 to 30 feet from the stairs. Graber remembered walking into the restroom, relieving himself, and washing his hands. He did not remember leaving the restroom. The next thing he recalled was being loaded onto a Life Watch helicopter. He later learned that he had fallen down the stairs. At the Promise Regional Medical Center emergency room, doctors diagnosed Graber with a traumatic brain injury with loss of

2

consciousness, a right parietal cortex hemorrhagic contusion, a probable subarachnoid hemorrhage, and a C1 cervical fracture.

Graber had three neck surgeries after the fall. After his first surgery, he wore a halo for 11 weeks. His second surgery placed rods in the back of his neck because his bones were not fusing. His third surgery replaced a rod broken by a stress fracture. At the time of the regular hearing, Graber had another broken rod in his neck. His doctor had suggested a fourth surgery, but Graber was reluctant to go through with it because the prior surgeries had failed.

Due to his injuries and his inability to work, Jackson's Dairy eventually terminated Graber's employment on January 1, 2013, and ended his health benefits on January 31, 2013.

As part of the litigation within the Kansas Department of Labor, Division of Workers Compensation, several experts examined Graber. Dr. Paul Stein, a board certified neurological surgeon, reviewed Graber's medical records, obtained a subjective medical history, and performed a physical examination of Graber at the request of Dillon's. Dr. Stein diagnosed Graber with a fracture of his C1 vertebra and stenosis of his C3 and C4 vertebrae. He concluded Graber's fall was only a prevailing factor in the fracture, however, and not the stenosis. Dr. Stein gave Graber a 25% whole body impairment with permanent work restrictions due to the fall. He assessed Graber had a 50% task loss based on a list of possible job tasks, but he felt Graber could work if he could find a job within those restrictions. Dr. Stein also testified stairs are more hazardous than walkways, and there is a greater risk of injury when falling down stairs.

Dr. George Fluter, a medical doctor, also performed an examination on Graber. He concluded Graber had suffered a work-related injury resulting in a fracture of his first cervical vertebra, traumatic brain injury with loss of consciousness, right parietal cortex

3

contusion, and probable subarachnoid hemorrhage. He believed the fall was the predominant factor causing Graber's injuries, but he did not believe Graber's diabetes had caused the fall. In Dr. Fluter's opinion, Graber was not realistically employable and would need medical care for the rest of his life.

John Troyer, a fire captain in Sedgwick County and owner of a company that provides training on OSHA requirements, also testified at the regular hearing before the administrative law judge (ALJ). Captain Troyer gave the presentation at the safety meeting on August 21, 2011. During the presentation, Captain Troyer specifically covered safety issues related to stairs. He testified stairs are potentially a safety risk because people fall on them all the time. The elevation change increases the risk of falling, and any elevation change increases the chance of injury. According to Captain Troyer, an employee required to go up and down stairs is at a greater risk of falling and injuring himself or herself. Even properly built or maintained stairs still present a risk.

Graber's case proceeded to a preliminary hearing before a special administrative law judge (SALJ). The SALJ found Graber's accident was the prevailing factor in his injury and the injury arose out of and in the course of his employment. He reasoned the risk of falling down stairs was a special risk or hazard to which Graber was not normally exposed and to which the general public was exposed. This gave his unexplained fall, which normally would have been a neutral risk, a particular employment character.

In a review of the preliminary hearing order, Judge Gary Korte, acting on behalf of the Board, found Graber's injury did not arise out of and in the course of his employment. According to Judge Korte, "idiopathic" meant "of unknown origin or cause, for which no etiology is known." The Board believed that because the cause of Graber's fall was unexplained, it arose out of an idiopathic cause. After the 2011 amendments to the Kansas Workers Compensation Act (KWCA), injuries arising out of idiopathic causes

4

were no longer within the meaning of "arising out of and in the course of employment." Thus, Graber's injuries were not compensable.

Graber proceeded to litigate his claim to an award. The SALJ again found Graber's injuries were compensable following reasoning similar to his preliminary hearing order. On appeal, the Board again reversed the decision. The Board found Graber's injury was due to an unexplained fall. Unexplained accidents fell within the idiopathic cause exclusion in the amended KWCA, making Graber's injury noncompensable. The stairs also did not qualify as a special risk or hazard under the coming and going rule because they were not defective in any way.

In a concurring opinion, Judge John Carpinelli noted that prior cases established that any injury which occurred during a special work-related trip was compensable. Graber's meeting was arguably a work-related trip because he had to go to an off-site location for a mandatory meeting. These cases were no longer applicable, though, because they had been decided before the 2011 amendments to the KWCA. Furthermore, even if these cases were applicable, the cause of Graber's fall was unknown. While the evidence demonstrated the stairs created an increased risk, it did not show conclusively the stairs were the cause of the fall. Thus, Graber's injury was not compensable. Graber appeals.

We reverse and remand for further proceedings consistent with this opinion.

While Graber uses several arguments in defense of his position in his first brief, in his reply brief he concedes the sole issue before us is the meaning of idiopathic in K.S.A. 2015 Supp. 44-508(f)(3)(A)(iv). Graber argues the Board erred in defining idiopathic as "of unknown cause" instead of "as personal to the claimant." As such, the Board incorrectly found Graber's injuries did not arise out of his employment due to idiopathic

5

causes. Dillon's argues the rules of statutory construction lead to the result that idiopathic means of unknown cause, thus the Board's decision is correct.

The Kansas Judicial Review Act (KJRA) governs the review of cases arising under the KWCA. K.S.A. 2015 Supp. 44-556(a). Under KJRA, an appellate court may grant relief if it determines that the Board "has erroneously interpreted or applied the law." K.S.A. 2015 Supp. 77-621(c)(4). Statutory interpretation is a question of law over which appellate courts have unlimited review. *Golden Rule Ins. Co. v. Tomlinson*, 300 Kan. 944, 955, 335 P.3d 1178 (2014). Courts should liberally construe the provisions of the KWCA "only for the purpose of bringing employers and employees within the provisions of the [KWCA]." The provisions of the KWCA should be applied impartially to both employers and employees. K.S.A. 2015 Supp. 44-501b. Appellate courts do not owe deference to the ALJ's or the Board's interpretation of the given statute. *Douglas v. Ad Astra Information Systems*, 296 Kan. 552, 559, 293 P.3d 723 (2013).

Under the KWCA, an injury is compensable only if it arises out of and in the course of employment. K.S.A. 2015 Supp. 44-508(f)(2). An accidental injury arises out of employment only if (1) "[t]here is a causal connection between the conditions under which the work is required to be performed and the resulting accident," and (2) "the accident is the prevailing factor causing the injury, medical condition, and resulting disability or impairment." K.S.A. 2015 Supp. 44-508(f)(2)(B). Specifically excluded from arising out of employment are accidents or injuries which arise out of a neutral risk with no particular employment or personal character, a personal risk, or directly or indirectly from an idiopathic cause. K.S.A. 2015 Supp. 44-508(3)(A).

The primary issue in this case is whether Graber's injury fell within the definition of idiopathic in K.S.A. 2015 Supp. 44-508(3)(A)(iv) and is thus excluded from compensation under the KWCA. The KWCA, for some reason, does not define

idiopathic. Dillon's does not contest that Graber's injury occurred within the course of his employment.

The key to this case is the definition of "idiopathic" in the context of the KWCA. We reverse the finding of the Board that the injury here arose out of an idiopathic cause. We therefore reverse and remand for further proceedings.

Somehow, Kansas caselaw has not explicitly defined idiopathic within the context of our workers compensation law. We believe it will be of assistance to examine a number of Kansas cases where the word idiopathic has been used and also check dictionary definitions of the word.

Webster's Unabridged Third New International Dictionary 1123 (1993) defines idiopathic as being peculiar to the individual or arising spontaneously or from an obscure or unknown cause. The Merriam-Webster Dictionary (Online ed. 2016) defines idiopathic as arising spontaneously or from an obscure or unknown cause or as peculiar to the individual. The Concise Oxford English Dictionary 705 (10th ed. rev. 2002) defines idiopathic as it applies to medicine as a disease or condition which arises spontaneously or for which the cause is unknown.

Unfortunately these definitions do not resolve the question of what idiopathic means.

*State v. Massey*, 242 Kan. 252, 747 P.2d 802 (1987), apparently the earliest case to use the word in Kansas, was a criminal case in which the defendant raised a defense of unconsciousness due to epileptic seizures. The *Massey* court discussed the many form of epilepsy, noting "most . . . are idiopathic, meaning of unknown cause." 242 Kan. at 258.

In *Kuxhausen v. Tillman Partners*, 40 Kan. App. 2d 930, 197 P.3d 859 (2008), *aff'd* 291 Kan. 314, 241 P.3d 75 (2010), a negligence case, the plaintiff claimed she had developed a chemical sensitivity from exposure to epoxy-based paint. Some medical professionals referred to the condition as idiopathic environmental intolerance. The *Kuxhausen* court stated that "[d]octors use the term idiopathic to refer to something for which the cause is unknown." 40 Kan. App. 2d at 935.

Of course, neither of the cases are workers compensation cases.

In *Bennett v. Wichita Fence Co.*, 16 Kan. App. 2d 458, 824 P.2d 1001, *rev. denied* 250 Kan. 804 (1992), Bennett was sent by his employer—Wichita Fence Co.—in a company vehicle to make a delivery. On the return trip, Bennett suffered an epileptic seizure, blacked out, and hit a tree. Wichita Fence Co. was aware of Bennett's condition, having filed a "notice of handicapped employee."

In the initial compensation hearing, the ALJ found that Bennett's injuries arose out of his employment. On review the Board ruled that Bennett had not established the injury had arisen out of his employment, a finding that the district court affirmed.

There was no dispute on appeal that the accident occurred and the injuries were sustained in the course of employment. The only question was whether the injuries, following an epileptic seizure, arose out of the employment. Citing precedent from other states, the *Bennett* court noted that Bennett's employment—driving a company vehicle---placed Bennett in a position of increased risk. The increased risk provided the necessary causal connection between his injury and his employment. The court held the accident arose "out of" his employment. 16 Kan. App. 2d at 460. The court found that where an employment injury is clearly attributable to a personal (idiopathic) condition and no other factors intervene or operate to cause or contribute to the injury, no award would be

8

granted under the law at that time. Since the driving of the vehicle contributed to the injury, compensation was awarded. 16 Kan. App. 2d at 460.

In *Bennett,* this court held:

"Where an employment injury is clearly attributable to a personal (idiopathic) condition of the employee, and no other factors intervene or operate to cause or contribute to the injury, no award is granted. [Citation omitted.] But where an injury results from the concurrence of some preexisting idiopathic condition and some hazard of employment, compensation is generally allowed." 16 Kan. App. 2d at 460.

At least eight other Kansas Court of Appeals cases have used idiopathic and personal interchangeably in this way regarding the rule established in *Bennett*. See, *e.g.*, *Anderson v. Scarlett Auto Interiors*, 31 Kan. App. 2d 5, 11, 61 P.3d 81 (2002); *Miller v. Board of Trustees of KPERS*, 21 Kan. App. 2d 315, 320-21, 898 P.2d 1188 (1995); *Hirsi v. Tyson Fresh Meats, Inc.*, No. 103,760, 2011 WL 169176, at *6 (Kan. App. 2011); *Cox v. Country Haven*, No. 100,533, 2009 WL 1591693, at *3 (Kan. App. 2009) (unpublished opinion); *Lietzke v. True-Circle Aerospace*, No. 98,463, 2008 WL 2369908, at *9 (Kan. App. 2008) (unpublished opinion); *Heller v. Conagra Foods, Inc.*, No. 96,990, 2007 WL 1814293, at *5 (Kan. App. 2007) (unpublished opinion); *Prue v. Asplundh Tree Expert Co.*, No. 95,139, 2006 WL 2129211, at *3 (Kan. App. 2006) (unpublished opinion); *Bissen v. Hy-Vee Food Stores*, No. 92,457, 2004 WL 3048953, at *3 (Kan. App. 2004) (unpublished opinion).

The Board has defined idiopathic as both personal and of unknown cause. When defining idiopathic as personal, the Board has relied on *Bennett*. See*, e.g.*, *Roush v. Rent-A-Center, Inc.*, Docket No. 1,062,983, 2013 WL 1876358, at *2-3 (Kan. Work. Comp. App. Bd. 2013). When defining idiopathic as of unknown cause, the Board has relied on two Kansas court cases. See *Klingsporn v. First Student Management, LLC*, Docket No. 1,071,769, 2015 WL 1524538, at *8 (Kan. Work. Comp. App. Bd. 2015) (citing

9

*Kuxhausen*, 40 Kan. App. 2d 930); *Stoker v. Dustrol, Inc.*, Docket No. 1,065,785, 2013 WL 6920092, at \*4 (Kan. Work. Comp. App. Bd. 2013) (citing *Massey*, 242 Kan. at 258).

A number of other states also define idiopathic as a personal or innate condition as the Kansas Court of Appeals did in *Bennett*. The Supreme Court of Missouri defined idiopathic as "peculiar to the individual; innate" in the context of workers compensation in 1993. *Alexander v. D.L. Sitton Motor Lines*, 851 S.W. 2d 525, 527 n.3 (Mo. 1993). In 2005, Missouri reformed its Workers Compensation Act to exclude idiopathic injuries, adopting language similar to the Kansas statute at issue. See Mo. Rev. Stat. § 287.020.3(3)(2013). ("An injury resulting directly or indirectly from idiopathic causes is not compensable."). Missouri Court of Appeals cases since the reform have held the prior definition of idiopathic still applies under the new statute. See *Taylor v. Contract Freighters, Inc.*, 315 S.W.3d 379, 381 (Mo. App. 2010); *Ahern v. P & H, LLC*, 254 S.W.3d 129, 132-33 (Mo. App. 2008). Other states have similarly defined idiopathic in caselaw. See*, e.g.*, *City of Brighton v. Rodriguez*, 318 P.3d 496, 503 (Colo. 2014) (noting personal risks include preexisting idiopathic illnesses and medical conditions); *Lodgsdon v. ISCO Co.*, 260 Neb. 624, 628, 618 N.W.2d 667 (2013) (stating one category of risk causing injury to employees is "personal to the claimant, *e.g.*, idiopathic causes").

Several major treatises also define idiopathic as personal or innate. The leading treatise in the workers compensation field, Larson's Workers' Compensation Law, defines idiopathic injuries as:

> "Generally understood within the workers' compensation framework to mean 'self-originated,' these injuries usually spring from a personal risk of the claimant, e.g., heart disease, epilepsy, and the like. Such injuries are to be contrasted with those that are truly 'unexplained.' The latter generally are considered arising from a neutral risk . . . . Idiopathic injuries are said to have arisen from a personal risk. Idiopathic injuries, therefore, often are not compensable." Lawson's Workers' Compensation Glossary,

LEXISNEXIS LEGAL NEWSROOM, http://www.lexisnexis.com/legalnewsroom/workers-compensation/b/worker-comp-glossary/archive/2012/11/11/larson-s-workers-compensation-glossary.aspx#sthash.PN4fIamX.dpuf (last updated November 11, 2012).

Larson's also specifically distinguishes between unexplained falls and idiopathic falls, *i.e.*, falls caused by a condition personal to the claimant. See 1 Larson's Workers' Compensation Law § 7.04[1][b] (2015). Corpus Juris Secundum and American Jurisprudence also define idiopathic as a personal condition. 99 C.J.S. Workers' Compensation § 421 (defining idiopathic as "personal in nature, or peculiar to individual"); 82 Am. Jur. 2d Workers' Compensation § 338, p. 370 (defining idiopathic as "personal to claimant").

Dillon's argues defining idiopathic as personal to the claimant would make the provision at issue redundant. Courts must construe statutes to avoid unreasonable results as well as redundancy. *State v. Keel*, 302 Kan. 560, 574, 357 P.3d 251 (2015), *cert. denied* 136 S. Ct. 865 (2016). If idiopathic were defined as personal, it appears it would overlap with the exception that injuries arising out of personal risk are not covered under the Act. K.S.A. 2015 Supp. 44-508(f)(3)(A)(iii). If idiopathic were defined as of unknown cause, however, then an idiopathic fall would be the same as an unexplained fall. Kansas courts have already held that unexplained falls are neutral risks. *McCready v. Payless Shoesource*, 41 Kan. App. 2d 79, 92, 200 P.3d 479 (2009). Defining idiopathic as unknown or unexplained, then, would overlap with the provisions excluding neutral risks. See K.S.A. 2015 Supp. 44-508(f)(3)(A)(ii). Either way, the provision appears redundant.

Graber resolves this issue by arguing the legislature enacted K.S.A. 2015 Supp. 44-508(f)(3)(A)(iv) to specifically abrogate the "concurrence rule" with regard to preexisting (or idiopathic) conditions. The concurrence rule, as stated in *Bennett*, holds that when a preexisting condition combines with a work-related risk to create an injury, the injury is compensable. 16 Kan. App. 2d at 460. Thus, Graber contends, under the

amended Act, an injury that arises solely out of a personal risk is not compensable. Additionally, an accident that arises out of the concurrence of a personal health condition or risk and a work-related risk is also not compensable. This is the most congruous reading of this provision and supports defining idiopathic as personal to the claimant.

The overwhelming weight of authority shows idiopathic, within the context of workers compensation law, is defined as personal or innate to the claimant. Because the Board incorrectly defined idiopathic as of unknown cause, it misapplied K.S.A. 2015 Supp. 44-508(f)(3)(A)(iv). Thus, the Board erred in denying Graber compensation because his injury arose either directly or indirectly from an idiopathic cause.

*Neutral Risks and Increased-Danger Rule*

Graber's injury most likely arose from a neutral risk. Neutral risks are generally defined as risks with no particular employment or personal characteristic. K.S.A. 2015 Supp. 44-508(f)(3)(A)(ii); see *Hensley v. Carl Graham Glass*, 226 Kan. 256, 258, 597 P.2d 641 (1979). In cases prior to the 2011 amendments, Kansas courts have held unexplained falls are a neutral risk. *McCready*, 41 Kan. App. 2d at 92. In *McCready*, an employee's knee gave out without explanation while walking on a sidewalk on the way to her employer's warehouse. The *McCready* court found the unexplained fall was a neutral risk and that neutral risks were compensable. The court relied on what Larson's Workers' Compensation Law described as positional risk or but-for logic in explaining the compensability of neutral risks:

> "'[T]he nature of the cause of harm may be simply unknown. The commonest example of [this] is the unexplained fall in the course of employment. If an employee falls while walking down the sidewalk or across a level factory floor for no discoverable reason, the injury resembles that from stray bullets and other positional risks in this respect: The particular injury would not have happened if the employee had not been engaged upon an employment errand at the time. In a pure unexplained fall case, there is no way in which

12

an award can be justified as a matter of causation theory except by a recognition that this but-for reasoning satisfies the "'arising' requirement.'" 41 Kan. App. 2d at 89 (quoting 1 Larson's Workers' Compensation Law § 7.04[1][a]).

Another case similarly found an unexplained fall on a flat surface was a compensable neutral risk. *Nuessen v. Sutherlands*, No. 110,233, 2014 WL 1612607 (Kan. App. 2014) (unpublished opinion); but see *Meyer v. Nebraska Furniture Mart*, No. 107,424, 2012 WL 4937629 (Kan. App. 2012) (unpublished opinion) (finding substantial competent evidence supported Board's decision that unexplained fall was not compensable).

The amended Act has clearly eliminated universal compensation for neutral risks. See K.S.A. 2015 Supp. 44-508(f)(3)(A)(ii). As a result, the positional risk doctrine may no longer apply in Kansas. If injuries such as Graber's arise solely out of a neutral risk and rely only on the positional risk doctrine for recovery, the injuries are likely noncompensable. The increased-danger (or increased risk) rule, however, may establish the necessary causal connection in the case of some falls.

Under the increased-danger rule, an otherwise noncompensable fall may be compensable "if the employment places the employee in a position increasing the dangerous effects of such a fall, such as on a height, near machinery or sharp corners, or in a moving vehicle." 1 Larson's Workers' Compensation Law § 9.01[1] (2015). Previously, courts generally only applied the increased-danger rule to idiopathic falls because such falls were presumptively noncompensable—thus, an affirmative employment contribution was necessary to establish a basis for recovery. 1 Larson's Workers' Compensation Law § 9.01[1]. Since neutral risks were generally compensable, application of the increased-danger rule was unnecessary. 1 Larson's Workers' Compensation Law § 9.01[1]. With the amendment of the Act, however, neutral risks are

now presumptively noncompensable, and such an affirmative employment contribution is necessary to establish a causal connection.

The increased-danger rule would satisfy the statutory requirement for a causal connection as set out in the amended Act. Under K.S.A. 2015 Supp. 44-508(f)(2)(B), an injury by accident arises out of employment only if "there is a causal connection between the conditions under which the work is required to be performed and the resulting accident." In this case, Graber was required to attend a meeting on the second floor of an office building. To attend the meeting, he had to both traverse and be in the vicinity of industrial-type stairs. His accident involved falling down those same stairs. Because his work required him to be at risk of falling down those particular stairs and that was the nature of his accident, the causal connection requirement set out in the statute may be fulfilled by the increased risk.

Furthermore, the increased-danger rule also arguably removes unexplained falls from the category of neutral risks. In order to be neutral, a risk should have no particular employment character. Suddenly falling on a flat surface has no clear employment character, so such a fall is categorized as a neutral risk. Under the increased-danger rule, however, an unexplained fall combined with a work-related risk would result in an accident or injury with a particular employment character. In fact, this is part of the reasoning Judge Nelson used in reaching his decision that Graber's injuries were compensable. Thus, not only does the increased-danger rule establish the necessary causal connection, it also removes certain unexplained falls from the excluded category of neutral risks.

Kansas courts have previously recognized increased risk of injury due to employment as establishing a causal connection, though not in cases of injury due to neutral risk. See *Angleton v. Starkan, Inc.*, 250 Kan. 711, 718, 828 P.2d 933 (1992) ("If employment exposes the worker to an increased risk of injury of the type actually

14

sustained, the employer is liable for compensation.'"); *Johnson v. Johnson County*, 36 Kan. App. 2d 786, 789, 147 P.3d 1091("[W]hen an injury occurs at work, it is not compensable unless it is 'fairly traceable to the employment,' as contrasted with hazards to which a worker 'would have been equally exposed apart from the employment.'"), *rev. denied* 281 Kan. 1378 (2006). Whether the 2011 amendments have eliminated such holdings is not clear. See *Moore v. Venture Corporation*, 51 Kan. App. 2d 132, 138, 343 P.3d 114 (2015) (discussing effect of 2011 amendments to Act on some prior caselaw). The new Act has most likely eliminated the concurrence rule or the compensation of injuries occurring due to a combination of idiopathic and work-related causes. See *Hurtado v. I & A Painting and Remodeling*, Docket No. 1,058,894, 2015 WL 9672641 (Kan. Work. Comp. App. Bd. 2015) (majority of the Board finding concurrence rule eliminated by amended Act, but dissent finding concurrence rule still in effect). The Act did not, however, similarly eliminate rules such as the increased-danger rule by its plain language. Since such rules satisfy the statutory requirement for causal connection, these rules may still be in effect, particularly since the legislature has instructed the courts to liberally construe the Act to bring employees and employers within its provisions. K.S.A. 2015 Supp. 44-501b. If such rules are still in effect and the stairs presented an increased risk, Graber's injuries are compensable under the amended Act.

*Conclusion*

Because the Board misinterpreted idiopathic, its finding that Graber's injury did not arise out of his employment due to an idiopathic cause is erroneous. Whether an injury arose out of and in the course of employment, however, is a question of fact. *Scott v. Hughes*, 294 Kan. 403, 415-16, 275 P.3d 890 (2012). Appellate courts do not make factual findings, nor do they reweigh evidence or engage in de novo review. *Williams v. Petromark Drilling*, 299 Kan. 792, 795, 326 P.3d 1057 (2014); *Douglas*, 296 Kan. at 562. Thus, in order to determine whether Graber's injury arose out of and in the course of his

15

employment, this case should be remanded for reconsideration consistent with the above interpretation of K.S.A. 2015 Supp. 44-508(f)(3)(A).

Reversed and remanded with directions.