NOT DESIGNATED FOR PUBLICATION

No. 117,002

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MICHAEL RAY STEPTER,
*Appellee*,

v.

LKQ CORPORATION
and
INDEMNITY INSURANCE CO. OF NORTH AMERICA,
*Appellants*.

MEMORANDUM OPINION

Appeal from Workers Compensation Board. Opinion filed October 6, 2017. Affirmed.

*Kendra M. Oakes*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for appellants.

*Jan L. Fisher*, of McCullough, Wareheim & LaBunker, of Topeka, for appellee.

Before HILL, P.J., ATCHESON and SCHROEDER, JJ.

PER CURIAM: Michael Ray Stepter was involved in a one-vehicle accident while driving a truck LKQ Corporation rented for him to use on his delivery route in western Kansas. The Workers Compensation Board (the Board) found the accident arose out of and in the course of his employment. The Board rejected LKQ's assertion the accident was caused by Stepter's undiagnosed medical condition of sleep apnea. We find, based on the record as a whole, Stepter established his right to a workers compensation award and the factual determinations by the Board are supported by substantial competent evidence. We affirm.

1

Stepter worked for LKQ as a truck driver. His job duties consisted of loading car parts and delivering them to various body and repair shops throughout western Kansas. Roughly 60 percent of his work involved driving while the remainder was loading and unloading. On June 19, 2013, Stepter was injured in a single-vehicle accident while delivering parts for LKQ. Stepter's testimony reflects that the night before the accident, he went to bed around 10 p.m., woke up at 5:45 a.m., and arrived at work at 7 a.m. He left the shop to make deliveries on his normal route, ate lunch around 12:30 p.m. in Salina, and resumed driving immediately thereafter. The accident occurred at approximately 1:30 p.m. Stepter has no recollection of what caused the accident. He believes he fell asleep or passed out, although he did not remember feeling sleepy or fatigued prior to the accident.

Stepter suffered severe injuries in the accident and was unable to return to work for LKQ. He filed a claim for benefits under the Kansas Workers Compensation Act, K.S.A. 44-501, et seq. (KWCA). LKQ hired Dr. Michael Farrar, a cardiologist, to review Stepter's medical records and deposition testimony. In December 2015, Dr. Farrar's initial opinion indicated he thought Stepter had a high likelihood of undiagnosed sleep apnea. Stepter was referred to Dr. Brian Ladesich, a sleep apnea expert, for testing. Dr. Ladesich diagnosed Stepter with obstructive sleep apnea in January 2016; however, he was unable to say whether Stepter had the condition at the time of the accident. He testified that even if Stepter had sleep apnea at the time of the accident, he could not say it caused Stepter to fall asleep while driving. Dr. Ladesich did not offer an opinion as to the cause of Stepter's accident.

Dr. Farrar performed a physical examination of Stepter in March 2016. Dr. Farrar concluded Stepter had obstructive sleep apnea and that Stepter almost certainly had

obstructive sleep apnea prior to his accident and believed it was the only possible cause for the accident.

An administrative law judge (ALJ) did not accept Dr. Farrar's opinion and found Stepter was entitled to workers compensation benefits for his injuries. LKQ timely sought review before the Board. The Board affirmed the ALJ's decision, finding Dr. Farrar's testimony lacked credibility and was based on conjecture and speculation. LKQ timely appealed. Additional facts are set forth as necessary herein.

ANALYSIS

*Stepter's injuries were not the result of a personal or neutral risk.*

An employee who is injured while at work performing his or her job duties is generally covered by the Workers Compensation Act and is entitled to the benefits it provides. K.S.A. 2016 Supp. 44-501b specifies the conditions under which an employer is obligated to pay compensation for an employee's injuries as well as the employee's burden to establish his or her right to compensation, stating in pertinent part:

> "(b) If in any employment to which the workers compensation act applies, an employee suffers personal injury by accident, repetitive trauma or occupational disease arising out of and in the course of employment, the employer shall be liable to pay compensation to the employee in accordance with and subject to the provisions of the workers compensation act.
> "(c) The burden of proof *shall be on the claimant* to establish the claimant's right to an award of compensation and to prove the various conditions on which the claimant's right depends. In determining whether the claimant has satisfied this burden of proof, the trier of fact *shall consider the whole record*." (Emphasis added.)

3

LKQ argues the Board erred by imposing the burden on LKQ to prove the accident that caused Stepter's injuries resulted from a personal or neutral risk. LKQ asserts Stepter has the burden to establish his entitlement to workers compensation benefits; therefore, he must prove the accident was not a result of personal or neutral risk. LKQ's argument rests in the interpretation of the KWCA. Interpretation of a statute is a question of law over which appellate courts have unlimited review. *Neighbor v. Westar Energy, Inc.,* 301 Kan. 916, 918, 349 P.3d 469 (2015).

"'Accident' means an undesigned, sudden and unexpected traumatic event, usually of an afflictive or unfortunate nature and often, but not necessarily, accompanied by a manifestation of force." K.S.A. 2016 Supp. 44-508(d). "'Personal injury' and 'injury' mean any lesion or change in the physical structure of the body, causing damage or harm thereto. Personal injury or injury may occur only by accident, repetitive trauma or occupational disease as those terms are defined." K.S.A. 2016 Supp. 44-508(f)(1). "An injury is compensable only if it arises out of and in the course of employment." K.S.A. 2016 Supp. 44-508(f)(2).

> "'The two phrases arising "out of" and "in the course of" employment, as used in our Workers Compensation Act . . . have separate and distinct meanings; they are conjunctive, and each condition must exist before compensation is allowable. The phrase "*out of*" employment points to the cause or origin of the worker's accident and requires some causal connection between the accidental injury and the employment. An injury arises "out of" employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Thus, an injury arises "out of" employment if it arises out of the nature, conditions, obligations, and incidents of the employment. The phrase "*in the course of*" employment relates to the time, place, and circumstances under which the accident occurred and means the injury happened while the worker was at work in the employer's service. [Citations omitted.]' (Emphasis added.) *Kindel v. Ferco Rental, Inc.*, 258 Kan. 272, 278, 899 P.2d 1058 (1995)." *Rinke v. Bank of America*, 282 Kan. 746, 752, 148 P.3d 553 (2006).

4

LKQ argues the Board improperly shifted the burden onto LKQ to prove Stepter's accident was the result of a personal or neutral risk. However, LKQ does not specify what the personal or neutral risk was. Based on the other arguments raised in its brief, it is likely LKQ is arguing that Stepter allegedly falling asleep as the result of sleep apnea was a neutral or personal risk. We are not persuaded by LKQ's argument.

The Board found LKQ's evidence the accident was caused by Stepter's undiagnosed sleep apnea was based on conjecture and speculation. Even if that is LKQ's intended argument, it is unclear whether falling asleep itself or the alleged sleep apnea is the purported neutral or personal risk. The point is either not argued, or at best, incidentally raised but not fully argued. An issue not briefed by the appellant is deemed waived or abandoned. *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011). A point raised incidentally in a brief and not argued therein is also deemed abandoned. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013). LKQ's argument is not persuasive.

In reaching its decision, the Board held:

"Although it is claimant's burden to prove his entitlement to workers compensation benefits, a claimant need not unequivocally or definitively prove his or her position. A claimant must simply prove his or her right to compensation and the various conditions on which that right depends, are more probably true than not. Once a claimant satisfies that burden, the burden then becomes that of a respondent to prove the existence of a personal or neutral risk."

Here, it is undisputed the accident occurred while Stepter was at work and in the course of his work delivering car parts to various body shops in western Kansas. The only issue is what specifically caused the accident, and that fact is unknown. The record contains speculation he fell asleep, but no one knows for sure what happened. Sometimes accidents happen for unknown reasons and that does not mean the injured worker is not

covered by the KWCA. See *Graber v. Dillon Companies*, 52 Kan. App. 2d 786, 797, 377 P.3d 1183 (2016) (an unexplained fall was compensable due to conditions of employment in which it occurred), *petition for rev. filed* July 25, 2016.

*The Board's finding that Stepter's accident did not arise out of a personal risk was supported by substantial evidence in the record.*

LKQ argues the Board's finding that Stepter's accident did not arise from a personal risk was based on a determination of fact not supported by substantial evidence when viewing the record as a whole. Courts must determine whether the evidence supporting the agency's factual findings is substantial when considered in light of all the evidence. *Sierra Club v. Moser*, 298 Kan. 22, 62, 310 P.3d 360 (2013). "Substantial evidence" refers to "'evidence possessing something of substance and relevant consequence to induce the conclusion that the award was proper, furnishing a basis [of fact] from which the issue raised could be easily resolved.' [Citation omitted.]" *Rogers v. ALT-A&M JV*, 52 Kan. App. 2d 213, 216, 364 P.3d 1206 (2015).

When determining fact questions, an appellate court's responsibility is to review the record as a whole to determine whether the Board's factual determinations are supported by substantial evidence. "This analysis requires the court to (1) review evidence both supporting and contradicting the agency's findings; (2) examine the presiding officer's credibility determination, if any; and (3) review the agency's explanation as to why the evidence supports its findings. The court does not reweigh the evidence or engage in de novo review. [Citations omitted.]" *Williams v. Petromark Drilling, LLC*, 299 Kan. 792, 795, 326 P.3d 1057 (2014).

LKQ argues the Board unreasonably disregarded Dr. Farrar's opinion that Stepter's undiagnosed sleep apnea caused the accident despite no evidence Stepter suffered from fatigue on the day of the accident. The Board specifically rejected Dr. Farrar's opinion

6

regarding causation. The Board acknowledged it could not arbitrarily disregard the testimony of any witness; however, it was not obligated to accept and give effect to any evidence, even if uncontradicted, if it believed the evidence was unreliable. Indeed, "the trier of fact does not have to 'accept and give effect to any evidence which, in its honest opinion, is unreliable, even if such evidence be uncontradicted.' *Beard v. Montgomery Ward & Co.*, 215 Kan. 343, 348, 524 P.2d 1159 (1974) (quoting *Collins v. Merrick*, 202 Kan. 276, Syl. ¶ 3, 448 P.2d 1 [1968])." *Estate of Emery v. State*, No. 107,921, 2013 WL 781137, at *4 (Kan. App. 2013) (unpublished opinion).

The Board found Dr. Ladesich's testimony was more credible than Dr. Farrar's and cast doubt on the reasonableness of Dr. Farrar's opinions. The Board found Dr. Ladesich's testimony that he did not know whether Stepter had sleep apnea at the time of the accident or whether the accident was caused by sleep apnea "support[ed] a reasonable inference that Dr. Farrar's conclusions were conjectural and based on speculation." It pointed to six reasons for its finding:

- The testing performed by Dr. Farrar and Dr. Ladesich did not occur until more than two years after the accident;
- After review of Dr. Farrar's deposition and the exhibits contained therein, the Board found his assertions neither credible nor reasonable;
- Stepter had not been diagnosed with sleep apnea prior to the accident;
- Stepter's testimony that he had not experienced fatigue, dizziness, loss of consciousness, or episodes of falling asleep while driving prior to or after the accident was uncontroverted;
- Stepter testified he did not have chronic fatigue before or after the accident; and
- Stepter had no prior motor vehicle accidents due to falling asleep while driving.

7

The Board's findings are well supported by the record. Dr. Farrar is not a sleep apnea expert, Dr. Ladesich is. Dr. Ladesich testified the test used by Dr. Farrar in diagnosing Stepter with sleep apnea is a crude test and he does not use it in his practice. Dr. Ladesich also testified he does not know whether Stepter had sleep apnea at the time of the accident and has no way of knowing whether his accident occurred because he fell asleep due to sleep apnea or for another reason. Dr. Ladesich indicated there are several reasons why someone could fall asleep while driving other than sleep apnea. He further testified and clarified even if Stepter had sleep apnea, it may not have caused him to experience any symptoms of fatigue at the time of the accident.

Dr. Ladesich's testimony creates a genuine dispute as to the reliability of Dr. Farrar's opinions. In reviewing the Board's findings, this court does not reweigh the evidence or engage in de novo review; rather, this court looks at the Board's credibility determinations and its explanation as to why the evidence supports its findings. See *Williams*, 299 Kan. at 795. Here, the Board's reasons for rejecting Dr. Farrar's opinions are well explained in its order and are supported by substantial evidence when viewing the record as a whole. The Board did not arbitrarily, capriciously, or unreasonably disregard Dr. Farrar's testimony. It found his opinion was based on conjecture and speculation and did not err in its factual determinations. The Board's conclusion Dr. Ladesich's opinion was more credible than Dr. Farrar's opinion is supported by the record as a whole.

*The concurrence rule does not apply.*

LKQ argues the Board erroneously interpreted or applied the KWCA by implying the "concurrence rule" had not been abrogated by the 2011 amendments to the KWCA. Curiously, LKQ does not point to any specific portion of the Board's order in which this alleged implication was made. As the appellant, LKQ has an affirmative duty to show error by the Board. LKQ has provided no citation to the record showing where the Board

8

made this allegedly erroneous ruling, nor does it even fully explain or argue the nature of the error. A point raised incidentally in a brief and not argued therein is deemed abandoned. An appellate court presumes a factual statement made without a reference to volume and page number has no support in the record. See *Friedman*, 296 Kan. at 644-45.

LKQ is correct that the concurrence rule was most likely abrogated by the 2011 amendments to the KWCA, specifically K.S.A. 2016 Supp. 44-508(f)(3)(A)(i)-(iv). As *Graber* explained, Kansas courts previously applied the concurrence rule where a claimant's injuries resulted from the concurrence of a personal risk and the conditions of the claimant's employment. In other words, a personal risk was not a bar to compensability as long as the accident or injury resulted from a combination of the personal risk *and* the conditions of employment. However, as *Graber* noted, the concurrence rule was probably abolished by the 2011 amendments to the KWCA. See *Graber*, 52 Kan. App. 2d at 792, 798 (discussing the concurrence rule as explained in *Bennett v. Wichita Fence Co.*, 16 Kan. App. 2d 458, 460, 824 P.2d 1001 [1992]).

LKQ errs in asserting the Board somehow implied the concurrence rule had not been abrogated or applied it in its decision. The Board found Stepter's injuries occurred as a result of an accident in the course of his employment, "and his accident or injury did not arise out of a personal risk, a neutral risk, or directly or indirectly from idiopathic causes." In other words, the Board rejected LKQ's contention Stepter had sleep apnea at the time of the accident. Further, the Board found even if Stepter had sleep apnea at the time of the accident, the record did not establish he fell asleep as a consequence thereof. The record does not support LKQ's claim. Further, LKQ's argument centers on the premise Stepter had sleep apnea and the accident was a consequence thereof. As previously discussed, the Board's factual findings were supported by substantial evidence.

Affirmed.