IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 113,412

ESTATE OF TERRILL L. GRABER,
*Appellant*,

v.

DILLON COMPANIES,
*Appellee.*

SYLLABUS BY THE COURT

1.

The interpretation or construction of the Kansas Workers Compensation Act, K.S.A. 2018 Supp. 44-501 et seq., is a question of law.

2.

When exercising unlimited review on questions of statutory interpretation, an appellate court owes no deference to interpretations given to the Act by the Workers Compensation Appeal Board.

3.

The determination of whether the Kansas Workers Compensation Appeal Board's findings of fact are supported by substantial competent evidence is a question of law.

4.

To obtain benefits under the Kansas Workers Compensation Act, K.S.A. 2018 Supp. 44-501b(b) provides that an injured worker must demonstrate the worker suffered personal injury by accident, repetitive trauma, or occupational disease arising out of and in the course of employment.

1

5.

Under K.S.A. 2018 Supp. 44-508(f)(3)(A)(iv), the phrase "arising out of and in the course of employment" does not include an accident or injury that "arose either directly or indirectly from idiopathic causes."

6.

The term "idiopathic causes" in K.S.A. 2018 Supp. 44-508(f)(3)(A)(iv) means a medical condition or medical event of unknown origin that is peculiar to the injured individual.

Review of the judgment of the Court of Appeals in 52 Kan. App. 2d 786, 377 P.3d 1183 (2016). Appeal from Workers Compensation Board. Opinion filed April 12, 2019. Judgment of the Court of Appeals reversing the Workers Compensation Board is affirmed. Judgment of the Workers Compensation Board is reversed, and the case remanded with directions.

*Jan L. Fisher*, of McCullough, Wareheim & LaBunker, of Topeka, argued the cause, and *Matthew L. Bretz*, of Bretz & Young, LLC, of Hutchinson, was with her on the briefs for appellant.

*Dallas L. Rakestraw*, of McDonald Tinker P.A., of Wichita, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

BILES, J.: To obtain benefits under the Kansas Workers Compensation Act, K.S.A. 2018 Supp. 44-501 et seq., an injured worker must demonstrate that the worker suffered personal injury by accident, repetitive trauma, or occupational disease arising out of and in the course of employment. K.S.A. 2018 Supp. 44-501b(b). In 2011 the Legislature excluded from the events eligible for benefits an accident or injury that "arose either directly or indirectly *from idiopathic causes*." (Emphasis added.) K.S.A. 2018 Supp. 44-

2

508(f)(3)(A)(iv). In this case of first impression, we must define what the term "idiopathic causes" means.

This question presents itself because Terrill L. Graber was injured when he fell down a workplace stairway and the accident's cause remains a mystery. The Workers Compensation Appeals Board denied Graber compensation. It construed the statutory "idiopathic causes" exclusion broadly to cover all unknown causes. A Court of Appeals panel reversed, defining the term more narrowly. *Graber v. Dillon Companies*, 52 Kan. App. 2d 786, 377 P.3d 1183 (2016). Graber's employer, Dillon Companies, petitioned for review of that decision by this court, preferring the broader definition. As explained, our interpretation differs from the reading given by the Board and the panel. We hold the term "idiopathic causes" in this context means medical conditions or medical events of unknown origin that are peculiar to the injured individual. We remand Graber's case to the Board for reconsideration consistent with our interpretation.

FACTUAL AND PROCEDURAL BACKGROUND

Graber worked as a forklift operator at Jackson's Dairy, a Dillon Companies subsidiary. Jackson's required Graber to attend a paid safety meeting at the nearby Dillon headquarters. The meeting was on the second floor, so Graber had to go up and down a flight of stairs several times that day. Graber described the stairway as having concrete steps with metal hand railings.

When the meeting ended, Graber walked to a restroom near the stairs. He ended up face down on a landing at about the midpoint on the stairway, shattering or breaking three vertebra in his neck. He was hospitalized for several days, underwent surgery, and had to wear a neck brace for 11 weeks.

Graber said he did not remember leaving the restroom and there were no witnesses. There was no evidence tending to show exactly how the fall occurred. And there was no evidence of anything unusual about the stairs that might have caused Graber to trip or slip on them.

There was evidence that stairways generally pose a greater risk than flat surfaces. John Troyer, the instructor for the safety training, testified stairs are a potential safety issue because "people fall on them all the time." He explained the elevation change increases the risk. When asked if stairs themselves create a greater risk of injury than just a flat, level floor, he concluded "[a]nything that has an elevation change would increase the chance of, I mean, anything. If there's a crack in the sidewalk or ice or anything that is different than the flat level ground would increase it, yes." He agreed that when an employee must use stairs as part of a job, there is an increased risk for falling and being injured. This was echoed by Dr. Paul Stein, who did an independent medical evaluation of Graber. Stein agreed stairs are harder to navigate than flat walkways, noting they are "a more complex bodily activity." He also acknowledged there is a greater injury risk when someone falls on stairs, as compared to a flat walkway.

There also was evidence Graber suffered from diabetes, a condition requiring him to take insulin and check his blood sugar daily. And Graber testified he had not checked his blood sugar the day of the accident. But he said his blood sugar had gotten high sometimes, and he had noticed no adverse effects.

There was no evidence that Graber's diabetes contributed to the accident. Graber testified he felt great when the meeting was winding up and had experienced no fainting spells, numbness, tingling, or problems with feeling in his extremities from the diabetes. A coworker said Graber did not act strangely and did not seem to be in a fog, unconscious, dazed, confused, or stumbling. He did not observe anything unusual about

Graber's behavior when he last saw him before the fall. And another coworker also denied seeing anything wrong with Graber during the meeting, such as dizziness, confusion, or unsteadiness.

Graber applied for workers compensation benefits, claiming his fall was a work-related injury. An administrative law judge awarded him benefits after finding the injury arose out of and in the course of his employment. The administrative judge reasoned the requirement to use the stairs increased the risk to Graber, and that the accident did not arise from an idiopathic or neutral risk, giving the injury a clear employment character. Dillon appealed, arguing the fall's cause was unknown, which meant Graber's injuries arose from an idiopathic cause and were not compensable.

The Board agreed with Dillon. After noting the fall was of unknown origin or cause, the Board found the accident did not arise out of and in the course of Graber's employment with Dillon. The Board noted that before the Legislature excluded what the Board described as "idiopathic falls" from compensation, unexplained falls in Kansas were considered compensable. The Board also noted that most jurisdictions compensate injured workers suffering from unexplained falls based on an understanding that an unexplained fall is a neutral risk and would not have otherwise occurred if the employee had not been working. But, it reasoned, the Act's 2011 changes showed the "legislature displayed a clear intent to exclude such unexplained and neutral risk injuries from compensation."

Graber appealed. A Court of Appeals panel reversed. The panel held "idiopathic" as used in the Act means "personal or innate to the claimant." *Graber*, 52 Kan. App. 2d at 795. It concluded Graber's injuries could be compensable if the staircase posed an increased risk sufficient to supply the necessary causal connection between the employment and the injuries. The panel remanded the case to the Board to resolve the

5

factual question whether Graber's injury arose out of and in the course of employment based on the panel's statutory interpretation. 52 Kan. App. 2d at 798.

We granted Dillon's petition for review. Jurisdiction is proper. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review). After review was granted, we substituted the Estate of Terrill L. Graber as the claimant/appellant.

## ANALYSIS

An accidental workplace injury is compensable if it arises out of and in the course of employment. K.S.A. 2018 Supp. 44-501b(b). But the law provides exclusions from that general rule when an accident or injury arises directly or indirectly from idiopathic causes. K.S.A. 2018 Supp. 44-508(f)(3)(A)(iv). Dillon challenges the panel's decision solely on the disputed definition of "idiopathic causes."

*Standards of review*

The Board's decision is subject to review under the Kansas Judicial Review Act, K.S.A. 2018 Supp. 77-601 et seq. The party challenging it bears the burden of proving the agency action was invalid. See K.S.A. 2018 Supp. 77-621(a). The reviewing court may grant relief only for statutorily enumerated reasons, which include two relevant for this appeal:  the agency erroneously interpreted or applied the law, and the agency action was based on a factual determination not supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole. K.S.A. 2018 Supp. 77-621(c). The statutes further provide:

6

"'[I]n light of the record as a whole' means that the adequacy of the evidence in the record before the court to support a particular finding of fact shall be judged in light of all the relevant evidence in the record cited by any party that detracts from such finding as well as all of the relevant evidence in the record . . . cited by any party that supports such finding, including any determinations of veracity by the presiding officer who personally observed the demeanor of the witness and the agency's explanation of why the relevant evidence in the record supports its material findings of fact. In reviewing evidence in light of the record as a whole, the court shall not reweigh the evidence or engage in de novo review." K.S.A. 2018 Supp. 77-621(d).

The interpretation or construction of the Workers Compensation Act is a question of law. But once that interpretation or construction occurs, the ultimate question of whether an accident arises out of and in the course of employment is a question of fact. *Atkins v. Webcon*, 308 Kan. 92, 95, 419 P.3d 1 (2018). The determination of whether the Board's findings of fact are supported by substantial competent evidence is a question of law. 308 Kan. at 95.

*Additional background*

An employer is liable to pay workers compensation "[i]f in any employment to which the workers compensation act applies, an employee suffers personal injury by accident, repetitive trauma or occupational disease arising out of and in the course of employment . . . ." K.S.A. 2018 Supp. 44-501b(b). To obtain compensation,

"The burden of proof shall be on the claimant to establish the claimant's right to an award of compensation and to prove the various conditions on which the claimant's right depends. In determining whether the claimant has satisfied this burden of proof, the trier of fact shall consider the whole record." K.S.A. 2018 Supp. 44-501b(c).

7

Before 2011, the Act did not define "arising out of and in the course of" employment" except to exclude injuries suffered while coming and going from work or sustained at recreational or social events. See K.S.A. 2010 Supp. 44-508(f). Caselaw construing the phrase "arising out of and in the course of employment" explained,

> """The two phrases arising 'out of' and 'in the course of' employment, as used in our Workers Compensation Act . . . have separate and distinct meanings; they are conjunctive, and each condition must exist before compensation is allowable. The phrase 'out of' employment points to the cause or origin of the worker's accident and requires some causal connection between the accidental injury and the employment. An injury arises 'out of' employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Thus, an injury arises 'out of' employment if it arises out of the nature, conditions, obligations, and incidents of the employment. The phrase 'in the course of' employment relates to the time, place, and circumstances under which the accident occurred and means the injury happened while the worker was at work in the employer's service."' [Citations omitted.]" *Atkins*, 308 Kan. at 98 (quoting *Scott v. Hughes*, 294 Kan. 403, 416, 275 P.3d 890 [2012]).

The Legislature amended the Act in 2011. This legislation was touted as a compromise negotiated between business and labor. See Minutes of Sen. Commerce Committee, March 9, 2011, Att. 1 (Testimony of Frederick J. Greenbaum, attorney appearing on behalf of Kansas Chamber of Commerce, Kansas Society of Human Resource Management, and Kansas Self-Insurers Association). The testimony favoring revision does not specifically address the idiopathic cause exclusion.

According to the legislation's proponents, the "arises out of" component, meant to require a causal connection between work and injury but had obtained "a misguided

8

interpretation of what injuries arise out of work." See Minutes of Sen. Commerce Committee, March 9, 2011, Att. 1, p. 1. Proponents meant their proposal to

"raise[ ] the standard for compensability. Under the compromise, the work incident must now be the 'prevailing factor' or the cause of both the accident and the injury. The 'prevailing factor' test will require employers to only compensate employees and treat conditions for which the work injury was the prevailing or primary factor in relation to all other factors." See Minutes of Sen. Commerce Committee, March 9, 2011, Att. 1, p. 2.

Proponents also singled out appellate court decisions they claimed "resulted in the need for significant modifications to the language in the Act." See Minutes of Sen. Commerce Committee, March 9, 2011, Att. 3, p. 2 (Testimony of Gary R. Terrill, Kansas Association of Defense Counsel). In their view, "Both newer and older case law have resulted in Kansas employers paying for compensation for physical conditions which were not caused by the work the employee performed for the employer against which the claim has been made." See Minutes of Sen. Commerce Committee, March 9, 2011, Att. 3, p. 2.

After the 2011 revisions, K.S.A. 2018 Supp. 44-508(f) now provides,

"(2) An injury is compensable only if it arises out of and in the course of employment. An injury is not compensable because work was a triggering or precipitating factor. An injury is not compensable solely because it aggravates, accelerates or exacerbates a preexisting condition or renders a preexisting condition symptomatic.

. . . .

(B) An injury by accident shall be deemed to arise out of employment only if:

9

(i) There is a causal connection between the conditions under which the work is required to be performed and the resulting accident; and

(ii) the accident is the prevailing factor causing the injury, medical condition, and resulting disability or impairment.

"(3)(A) The words 'arising out of and in the course of employment' as used in the workers compensation act shall not be construed to include:

(i) Injury which occurred as a result of the natural aging process or by the normal activities of day-to-day living;

(ii) accident or injury which arose out of a neutral risk with no particular employment or personal character;

(iii) accident or injury which arose out of a risk personal to the worker; or

(iv) accident or injury *which arose either directly or indirectly from idiopathic causes*." (Emphasis added.)

*Discussion*

Dillon contends Graber's accident arose directly from an idiopathic cause, so the accident did not arise out of his employment because there was no evidence establishing what caused him to fall. Dillon attributes two missteps to the panel:  (1) ignoring the plain meaning of "idiopathic"; and (2) reaching a result that renders the "risk personal to the worker" exclusion in subsection (3)(A)(iii) superfluous. We reject each argument.

10

*1. The panel's interpretation is consistent with the statute's plain language.*

Legislative intent governs when courts interpret statutes if that intent can be determined. *State v. Davey*, 306 Kan. 814, 820, 397 P.3d 1190 (2017).

> "When a statute is plain and unambiguous, a court must give effect to its express language, rather than determine what the law should or should not be. *Graham v. Dokter Trucking Group*, 284 Kan. 547, 554, 161 P.3d 695 (2007). We determine legislative intent by first applying the meaning of the statute's text to the specific situation in controversy. See *State v. Phillips*, 299 Kan. 479, 495, 325 P.3d 1095 (2014) (first task in construing statute is to ascertain legislative intent through analysis of language employed, giving ordinary words their ordinary meanings). A court does not read into the statute words not readily found there. *Whaley*, 301 Kan. at 196; *Graham*, 284 Kan. at 554; see *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, 525, 154 P.3d 494 (2007). When the language is unclear or ambiguous, the court employs the canons of statutory construction, consults legislative history, or considers other background information to ascertain the statute's meaning. *Whaley*, 301 Kan. at 196." *Hoesli v. Triplett, Inc.*, 303 Kan. 358, 362, 361 P.3d 504 (2015).

A court presumes the Legislature expressed its intent through the statutory language used. And while words in common usage should be given their ordinary meaning, words and phrases that acquire a peculiar and appropriate meaning in law are construed accordingly. *Foos v. Terminix*, 277 Kan. 687, 695-96, 89 P.3d 546 (2004). State law also provides:

> "In the construction of the statutes of this state the following rules shall be observed, unless the construction would be inconsistent with the manifest intent of the legislature or repugnant to the context of the statute:
>
> . . . .

11

"Second. Words and phrases shall be construed according to the context and approved usage of the language, but technical words and phrases, and other words and phrases that have acquired a peculiar and appropriate meaning in law, shall be construed according to their peculiar and appropriate meanings." K.S.A. 2018 Supp. 77-201.

The panel's analysis turned first to dictionary definitions of idiopathic. "Dictionary definitions are good sources for the 'ordinary, contemporary, common' meanings of words." *Midwest Crane & Rigging, LLC v. Kansas Corporation Comm'n*, 306 Kan. 845, 851, 397 P.3d 1205 (2017). The panel reasoned:

"Webster's Unabridged Third New International Dictionary 1123 (1993) defines idiopathic as being peculiar to the individual or arising spontaneously or from an obscure or unknown cause. The Merriam-Webster Dictionary (Online ed. 2016) defines idiopathic as arising spontaneously or from an obscure or unknown cause or as peculiar to the individual. The Concise Oxford English Dictionary 705 (10th ed. rev. 2002) defines idiopathic as it applies to medicine as a disease or condition which arises spontaneously or for which the cause is unknown.

"Unfortunately these definitions do not resolve the question of what idiopathic means." *Graber*, 52 Kan. App. 2d at 791.

In Dillon's view, these definitions show a "unanimity of opinion" the panel ignored—"that 'idiopathic' means arising spontaneously from an unknown cause." But even if the panel placed insufficient stock in dictionary definitions, it was not in the way Dillon contends because the consistent connotation is medical in nature.

Closer analysis rebuts Dillon's claim that "idiopathic" means merely "spontaneous" and "unknown." Webster's New World College Dictionary 722 (2016) defines "idiopathic" as "designating or of a disease whose cause is unknown or

12

uncertain." Webster's Unabridged Third New International Dictionary 1123 (1993), which the panel cited, defines "idiopathic" as "1: peculiar to the individual," in the sense of "innate," as in "[idiopathic] sensitivity"; and "2: arising spontaneously or from an obscure or unknown cause," in the sense of "primary," as in "[idiopathic] epilepsy." And Webster's II New Riverside University Dictionary 608 (1994) defines "idiopathic" as the adjective form of "idiopathy," which is defined as "1. A disease of unknown origin or cause. 2. A disease for which no etiology is known." See also Georgia Workers' Comp. Law & Practice § 6:5 n.1 ("Idiopathic' pertains to conditions without a clear pathogenesis [without a clear origin of the pathology] or to disease without a recognizable cause, of spontaneous origin.") (citing Taber's Cyclopedic Medical Dictionary [F.A. Davis Co., 1977]).

Secondary authority also supports the panel's interpretation based on the term's meaning in caselaw. See *Midwest Crane*, 306 Kan. at 851 (citing caselaw discussing "cargo" in the context of shipping goods as support for conclusion that to be "cargo" as used in federal motor carrier statute did not include movable property permanently affixed to mode of conveyance); see also *Graber*, 52 Kan. App. 2d at 791-94.

Before the 2011 amendments, our caselaw employed the word "idiopathic" in connection with medical conditions. See *Echord v. Rush*, 124 Kan. 521, 525, 261 P. 820 (1927) (holding injury from occupational disease noncompensable because, citing Delaware court's rationale that "[s]low, gradual idiopathic disease, unaccompanied and unrelated to any injury by accident, but caused by exposure to acid and chemicals, is not embraced within the terms of workmen's compensation law" for the proposition that "accident" requires "suddenness"). And in a 1987 criminal case, the court commented that some researchers "consider alcoholic epilepsy to be only one of the many forms of epilepsy, most of which are idiopathic, meaning of unknown cause." *State v. Massey*, 242 Kan. 252, 747 P.2d 802 (1987). Similarly, in a 2008 tort case discussing "multiple-

13

chemical sensitivity, also known as "idiopathic environmental intolerances," the Court of Appeals commented that "Doctors use the term idiopathic to refer to something for which the cause is unknown." *Kuxhausen v. Tillman Partners*, *L.P.* 40 Kan. App. 2d 930, 935, 197 P.3d 859 (2008); see also *Calwell v. Hassan*, 260 Kan. 769, 774, 925 P.2d 422 (1996) (expert witness in personal injury litigation against vehicle driver and driver's doctor testified driver probably "had idiopathic hypersomnolence").

Also, a handful of preamendment workers compensation cases used the word in connection with medical conditions. See *Bennett v. Wichita Fence Co.*, 16 Kan. App. 2d 458, 460, 824 P.2d 1002 (1992) (describing a workers compensation claimant's epileptic seizure as a "'personal [idiopathic] condition of the employee'"); see also *Burton v. Rockwell International*, 266 Kan. 1, 4, 967 P.2d 290 (1998) (quoting ALJ decision noting doctor's written reports stated claimant had aggravations of his "idiopathic adult onset asthma"); *Echord*, 124 Kan. at 525. And in an unpublished decision, *Bissen v. Hy-Vee Food Stores*, No. 92,457, 2004 WL 3048953, at *3 (Kan. App. 2004), the Court of Appeals affirmed the Board's finding that a claimant "suffered an idiopathic/personal condition" when there was evidence she suffered dizziness right before a fall and reported to paramedics that she had fainted.

The panel noted other Court of Appeals decisions invoking *Bennett*'s idiopathic condition rule in circumstances involving claimant's preexisting medical conditions. See *Anderson v. Scarlett Auto Interiors*, 31 Kan. App. 2d 5, 6, 61 P.3d 81 (Kan. App. 2002) (lower back pain); *Hirsi v. Tyson Fresh Meats, Inc.*, No. 103,760, 2011 WL 169176, at *6 (Kan. App. 2011) (unpublished opinion) (tuberculosis); *Lietzke v. True-Circle Aerospace*, No. 98,463, 2008 WL 2369908, at *9 (Kan. App. 2008) (unpublished opinion) (preexisting hip and groin injuries); *Heller v. Conagra Foods, Inc.*, No. 96,990, 2007 WL 1814293, at *5 (Kan. App. 2007) (unpublished opinion) (arthritis); *Prue v. Asplundh Tree Expert Co.*, No. 95,139, 2006 WL 2129211, at *3 (Kan. App. 2006)

14

(unpublished opinion) (degenerative arthritis); see also *Miller v. Board of Trustees of KPERS*, 21 Kan. App. 2d 315, 320, 898 P.2d 1188 (1995) (citing *Bennett* in discussion whether police officer's hip injuries, heart attack, and psychological problems were service-related disabilities for purposes of drawing KPERS benefits).

Admittedly, these cases do not set out to define "idiopathic," including the two on which Dillon relies, *Massey* and *Kuxhausen*. But their common theme is that the term is used to signify a medical condition or medical event—not as a synonym for all unknown causes.

Also persuasive is recognition that our caselaw's repeated use of "idiopathic" in the medical context is consistent with the leading treatises' view of how workers compensation schemes consider "idiopathic." For example, Professor Larson maintains a distinction between cases involving unexplained falls and those "in which there was at least some possibility of a personal or idiopathic factor contributing to the fall." 1 Larson's Workers' Compensation Law § 7.04[1][b] (2018). He maintains that while a risk may be neutral either because the risk is known but not associated with the employment or the employee or because the cause of harm is unknown, "[w]henever personal disease or weakness contributes to the fall, an entirely new set of rules comes into play, since the risk is no longer neutral but either personal or, perhaps, 'mixed' . . . ." 7.04[1][b]. He explains:

> "When an employee, solely because of a nonoccupational heart attack, epileptic fit, or fainting spell, falls and sustains a skull fracture or other injury, the question arises whether the skull fracture (as distinguished from the internal effects of the heart attack or disease, which of course are not compensable) is an injury arising out of the employment.
>
> "The basic rule, on which there is now general agreement, is that the effects of such a fall are compensable if the employment places the employee in a position

15

increasing the dangerous effects of such a fall, such as on a height, near machinery or sharp corners, or in a moving vehicle. The long-standing controversial question is whether the effects of an idiopathic fall to the level ground or bare floor should be deemed to arise out of the employment." 1 Larson's Workers' Compensation Law § 9.01[1].

A recent section of Larson's treatise entitled "Danger of Confusion with Idiopathic Fall Cases," mentions the panel's *Graber* decision as one in which "a Kansas court had to remind the state's Workers' Compensation Board that 'idiopathic' and 'unknown' are not synonyms; they have completely different meanings." 1 Larson's Workers' Compensation Law § 7.04[1][b].

Similarly, in 2 Modern Workers Compensation § 116.10, it is said,

"When an employee brings to his or her job some idiopathic condition before any injury can be found to be compensable under the workers' compensation law the employee must demonstrate that it resulted from an exertion or strain beyond that which he or she normally encountered in nonworking life. The standard of compensability for employees suffering from idiopathic conditions is therefore more confining than the general requirements for an injury to arise out of and in the course of the employment."

And in 99 C.J.S. Worker's Compensation § 524, a fall from "idiopathic" causes is defined as "a fall due to a cause internal or personal in nature, or peculiar to the employee." C.J.S. cites *Builder's Square, Inc. v. Industrial Com'n*, 339 Ill. App. 3d 1006, 1009, 791 N.E.2d 1308 (2003) (evidence showed an employee fell because of "an idiopathic condition such as cardiac arrhythmia or a cerebral hemorrhage"), as a case exemplifying its definition. And it cites another case in which an employee fainted when it was possible that "the cause of the faint was idiopathic." *Damis v. Cotter & Co.*, 89 Or. App. 219, 221-22, 748 P.2d 166 (1988).

The panel did not ignore the plain meaning of the term "idiopathic causes" when it refused to adopt Dillon's view that the term encompasses all "unknown causes."

> 2. *Dillon's favored interpretation is not mandated by the general rule that courts avoid interpretations that render portions of the statute meaningless.*

Dillon argues the panel's interpretation is wrong because it renders K.S.A. 2018 Supp. 44-508(f)(3)(A)(iii) (the "risk personal to the worker" exclusion) meaningless and redundant. It points out the panel conceded the redundancy when it reasoned:

> "If idiopathic were defined as personal, it appears it would overlap with the exception that injuries arising out of personal risk are not covered under the Act. K.S.A. 2015 Supp. 44-508(f)(3)(A)(iii). If idiopathic were defined as of unknown cause, however, then an idiopathic fall would be the same as an unexplained fall. Kansas courts have already held that unexplained falls are neutral risks. *McCready v. Payless Shoesource*, 41 Kan. App. 2d 79, 92, 200 P.3d 479 (2009). Defining idiopathic as unknown or unexplained, then, would overlap with the provisions excluding neutral risks. See K.S.A. 2015 Supp. 44-508(f)(3)(A)(ii). Either way, the provision appears redundant." *Graber*, 52 Kan. App. 2d at 794-95.

But even if there is some redundancy with either the personal risk or neutral risk exclusions, that does not require a different definition of "idiopathic." The canon that a statute should be construed to give meaning to each word is "certainly . . . one aid in construing statutory language, [but] it is neither the only one nor the cardinal one." See *State v. Schreiner*, 46 Kan. App. 2d 778, 784, 264 P.3d 1033 (2011). The "idiopathic" exclusion is a narrow one, certainly much narrower than the one proposed by Dillon.

In addition, Dillon's view that interpreting idiopathic to mean "unknown" would give meaning to each provision of K.S.A. 2018 Supp. 44-508(f)(3)(A) is flawed. Dillon suggests this progression of thought:  (1) the "neutral risk" exclusion pertains only to

17

accidents or injuries with known causes; and a (2) claimant's medical condition or other weakness is a personal risk; therefore (3) the only way to give effect to the term "idiopathic" is to define it as "unknown." But Dillon's first premise—that the neutral risk exclusion pertains only to accidents with known causes—is dubious. See *McCready v. Payless Shoesource*, 41 Kan. App. 2d 79, 92, 200 P.3d 479 (2009) (holding unexplained fall was compensable because it arose from a neutral risk, and therefore, the injury arose out of claimant's employment). Dillon cites three cases in which the court considered "known and established" reasons for the claimants' injuries to be "neutral risks." See *Hensley*, 226 Kan. at 258 (declaring sniper assault a neutral risk); *Siebert v. Hoch*, 199 Kan. 299, 308, 428 P.2d 825 (1967) (employee killed by assailant whose motive was not known); *Faulkner v. Yellow Transit Freight Lines, Inc.*, 187 Kan. 667, 359 P.2d 833 (1961) (employee killed by tornado). Only *Hensley* characterizes the risk as "neutral," but the distinction Dillon advocates based on its facts ignores the source of *Hensley*'s "neutral" characterization—Larson's treatise.

The categories of risk referenced in the 2011 amendments—neutral and personal—appeared in Kansas caselaw in 1979. *Hensley*, 226 Kan. at 258. Citing 1 Larson, Workmen's Compensation Law § 7 (1978), the *Hensley* court explained,

> "There are three general categories of risks in workmen's compensation cases: (1) those distinctly associated with the job; (2) risks which are personal to the workman; and (3) the so-called neutral risks which have no particular employment or personal character. The chance of being struck by sniper fire is not an ordinary risk associated with glass installers nor was the shooting of Hensley motivated by any personal connection with the sniper. The sniper's assault on Hensley falls into the category of neutral risks. See 1 Larson, Workmen's Compensation Law § 7 (1978)." 226 Kan. at 258.

Larson conceptualizes these risk categories as encompassing all possible risks that could result in a workplace injury. See 1 Larson's Workers' Compensation Law § 4.03

(2018) ("There are thus three categories of risk; but unfortunately, there are only two places where the loss may fall—on the industry or on the employee."). And Larson defines risks distinctly associated with employment and personal risks as the two ends of the risk continuum. The former "comprises all the obvious kinds of injury that one thinks of at once as industrial injury . . . machinery breaking, objects falling, explosives exploding, tractors tipping, fingers getting caught in gears, excavations caving in, and so on . . . ." 1 Larson's Workers' Compensation Law § 4.01. The latter includes "origins of harm so clearly personal that, even if they take effect while the employee is on the job, they could not possibly be attributed to the employment." 1 Larson's Workers' Compensation Law § 4.02. For example, Larson explains,

> "[i]f the time has come for the employee to die a natural death, or expire from the effects of some disease or internal weakness of which he or she would as promptly have expired whether the employee had been working or not, the fact that the demise takes place in an employment setting rather than at home does not, of course, make the death compensable." 1 Larson's Workers' Compensation Law § 4.02.

Larson defines the third category, neutral risks, expansively to mean any risks that have no particular employment or personal character. This risk category is illustrated by

> "a wide variety of controversial cases. A person hard at work in the middle of a factory yard may be hit by a stray bullet out of nowhere, bit by a mad dog, stabbed by a lunatic running amuck, struck by lightning, thrown down by a hurricane, killed by an enemy bomb, injured by a piece of tin blown from someone's roof, shot by a child playing with an air rifle, murdered as a result of mistaken identity, felled by debris from a distant explosion, or blinded by a flying beetle.
>
> "Another kind of neutral-risk case is *that in which the cause itself, or the character of the cause, is simply unknown*. An employee may be found to have died on the job from unexplained causes, *or he or she may suffer a slip or fall for no reason that*

19

*anyone, including the employee, can explain*. An employee may be attacked by unknown persons, whose motives may have been personal or related to the employment." (Emphases added.) 1 Larson's Workers' Compensation Law § 4.03.

According to Larson's, with respect to neutral risks

"the usual answer in the past has been to leave this loss on the employee, on the theory that he or she must meet the burden of proof of establishing affirmatively a clear causal connection between the conditions under which the employee worked and the occurrence of the injury. More recently, however, some courts have reasoned in the following vein: Either the employer or the employee must bear the loss; to show connection with the employment, there is at least the fact that the injury occurred while the employee was working; to show connection with the employee personally there is nothing; therefore, although the work connection is slender, it is at least stronger than any connection with the claimant's personal life." 1 Larson's Workers' Compensation Law § 4.03.

Notably, in *McCready*, which concluded that an unexplained fall was compensable, the Court of Appeals essentially applied this more recent rule about an unexplained workplace fall. The court held that the fall "was truly a neutral risk" because "[n]either party could explain the reason for [the claimant's] fall." 41 Kan. App. 2d at 79. And based solely on the fact the fall occurred at work, the court held "[t]he risk should . . . be borne by [the employer]" and that the "injury arose out of [claimant's] employment." 41 Kan. App. 2d at 92.

Proponents of the 2011 amendments identified *McCready* as an impetus for the legislation. See Minutes of Sen. Commerce Committee, March 9, 2011, Att. 1, p. 2 (Testimony of Frederick J. Greenbaum) (noting proposed legislation "addresses the *McCready* case in that neutral falls or accidents will no longer be compensable. Again, it requires that there must be a causal connection between the work and the accident."). It seems the Legislature may have intended its new "neutral risk" exclusion to address

unexplained workplace injuries—not the idiopathic causes exclusion. But we need not delve too deeply into this and do not decide the meaning of the "neutral risk" exclusion in this case, because Dillon does not claim it supports the Board's decision. Dillon asserts only that the evidence showed Graber's injury arose directly from an idiopathic cause.

We hold the plain language of K.S.A. 2018 Supp. 44-508(f)(3)(A)(iv) renders an injury noncompensable only upon proof the injury or accident arose directly or indirectly from a medical condition or medical event of unknown origin peculiar to the claimant. The term "idiopathic" as used in the caselaw and its definition in workers compensation treatises add persuasive heft to this conclusion.

### 3. *There is not substantial competent evidence supporting the Board's finding.*

In *Bennett*, the Court of Appeals discussed the rules applicable to idiopathic conditions when the record established the claimant's workplace accident was caused by a seizure. See 16 Kan. App. 2d at 460. And in *Bissen*, 2004 WL 3048953, at *2-3, there was substantial competent evidence to support a finding that a fall was because of an "idiopathic/personal condition" when there was evidence the claimant fainted.

> ""'Substantial competent evidence possesses both relevance and substance and provides a substantial basis of fact from which the issues can be reasonably determined."' *In re Equalization Appeal of Wagner*, 304 Kan. 587, 599, 372 P.3d 1226 (2016); see *Kotnour v. City of Overland Park*, 43 Kan. App. 2d 833, 837, 233 P.3d 299 (2010) ('Although [K.S.A. 77-621] does not define the term "substantial evidence," case law has long stated that it is such evidence as a reasonable person might accept as being sufficient to support a conclusion.')." *Atkins v. Webcon*, 308 Kan. 92, 96, 419 P.3d 1 (2018).

There was no evidence tending to show why Graber fell. Necessarily, there was no evidence he fell because of a medical condition or medical event. As a result, there was

not substantial competent evidence to support the Board's finding the accident or injury arose directly or indirectly from an idiopathic cause under this statutory exclusion.

We affirm the Court of Appeals judgment reversing the Board's decision. We remand the case to the Board for reconsideration consistent with this interpretation of K.S.A. 2018 Supp. 44-508(f)(3)(A).