NOT DESIGNATED FOR PUBLICATION

No. 122,378

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JAMES LEE FRANK,
*Appellant*,

v.

W.E.B. ENTERPRISES, LLC,
and
KANSAS WORKERS COMPENSATION FUND,
*Appellees*.

MEMORANDUM OPINION

Appeal from Workers Compensation Board. Opinion filed April 23, 2021. Affirmed.

*Mitchell W. Rice*, of Mann Wyatt & Rice, of Hutchinson, for appellant.

*Timothy A. Emerson*, of Wallace Saunders Chtd, of Wichita, for appellees.

Before MALONE, P.J., ATCHESON, J., and BURGESS, S.J.

PER CURIAM: James Lee Frank sustained work-related injuries when he fell off a ladder while hanging Christmas lights on a house. When Frank sought workers compensation benefits for his injuries, a dispute arose over whether he had been working for a company called Seasonal Lighting d/b/a Eric Keith or for W.E.B. Enterprises, LLC (W.E.B.), another company partially owned by Keith. Based on Keith's preliminary hearing testimony, the administrative law judge (ALJ) found that Frank was an employee of W.E.B. and awarded benefits. Because W.E.B. did not carry workers compensation insurance, the ALJ found that the Kansas Workers Compensation Fund (Fund) was liable to pay the benefits.

1

The Kansas Workers Compensation Appeals Board (Board) found that Frank was an employee of Seasonal Lighting based on Keith's evidentiary deposition testimony about the nature and relationship of his business operations and that Seasonal Lighting was a separate entity from W.E.B. Seasonal Lighting's payroll did not meet the threshold for coverage under the Workers Compensation Act (Act), so the Board reversed the ALJ's award. Because the Board gave reasons for disagreeing with the ALJ's witness credibility determination and its findings are supported by evidence that is substantial in light of the record as a whole, we affirm the Board's decision denying Frank's claim.

FACTS

In November 2016, Frank worked hanging Christmas lights for his sister's boyfriend's brother, Keith. At the time, Frank believed he was working for Keith's company, Home of the Green Team. Frank had sometimes worked for Keith in the past, mowing lawns, cleaning apartments, and hanging Christmas lights. It was an informal arrangement; Frank said he met with Keith each morning to learn which job he would be working on and he was paid weekly. When Keith did not have work for Frank, he would tell Frank to check back another time. Although Keith usually paid Frank in cash, Frank had at least once before 2016 been paid by a check from "Home of the Green Team, Eric Keith." Keith and his family were involved in several business ventures and in late 2014 had created W.E.B. because they felt it was more professional to have an LLC.

While working on November 17, 2016, Frank fell off a ladder onto a concrete driveway and fractured bones in his ankles, requiring surgery for his injuries and causing permanent disability. He was released from medical care on April 18, 2017. When Frank sought workers compensation benefits under the Act in August 2017, he identified his employer as "The Green Team/Seasonal Lighting Eric M. Keith." The next month, because Keith and his companies had no insurance, Frank impleaded the Fund.

2

The ALJ held a preliminary hearing on November 9, 2017. Frank sought temporary total disability (TTD) benefits from the date of his injury through the date he was released to begin working again, authorization for continuing treatment, and payment of past medical care. In response, the Fund argued that Frank's injury did not fall under the Act because, among other things, there was no employer/employee relationship and Frank's injury did not arise out of and in the course of employment.

From the beginning, it was unclear which of Keith's companies Frank had been working for at the time of his injury and the relationship between Keith's companies was similarly murky. At the preliminary hearing, Frank explained that he brought the workers compensation case against Home of the Green Team/Seasonal Lighting because he "didn't know who [he] was bringing the case against." As far as Frank knew, Home of the Green Team was the "parent company" that oversaw lawn mowing, installing Christmas lights, cleaning, and other services.

Keith also testified at the preliminary hearing as a witness for the Fund. He testified that "Home of the Green Team is a property maintenance company" that had begun as a maid service, while Seasonal Lighting was a separate entity that only hangs Christmas lights. Keith also explained that Home of the Green Team and Seasonal Lighting were "D/B/As" that he used. On cross-examination, Keith clarified that Home of the Green Team was a d/b/a for W.E.B., which he described as a "[c]orporate filing, company name." When asked if W.E.B. was "the corporate entity over all of these other D/B/As," Keith replied, "Sure." Keith explained that "[w]hen you market [Home of the Green Team and Seasonal Lighting] they sound better than WEB Enterprises," and he described the situation as "[w]e have a legal company, we have two D/B/As and that's it."

Keith also testified at the preliminary hearing that when Frank was injured, Seasonal Lighting had three employees—Frank, Josh Meyer, and Keith's son, Brandon— and in 2016, Seasonal Lighting paid around $2,500 in payroll to Meyer and Frank. Home

3

of the Green Team had four employees in 2016: Keith, Brandon, Keith's brother Chris, and Keith's daughter Whitney. Keith acknowledged that Meyer might have also worked for Home of the Green Team in 2016 and he estimated he might have paid Meyer around $800. Keith testified that in 2017, Home of the Green Team and Seasonal Lighting had one non-family member employee, to whom he estimated he paid $2,400.

Keith identified three owners of W.E.B.—himself, Brandon, and Whitney—and he maintained that W.E.B. did not have employees; rather, they hired individuals as needed, in a "cash basis contract labor type situation." Keith estimated the total 2016 payroll for W.E.B. at $90,000. But excluding his family members, Keith estimated payroll as $3,500 to $4,000. When asked whether it was fair to say that when money comes in for the d/b/a's, it is the LLC's money, Keith again replied, "Sure." At the end of Keith's testimony, the ALJ asked whether W.E.B. had bank accounts and whether those accounts were the source of payments to everyone; Keith responded, "Yes" to both questions.

On November 14, 2017, the ALJ issued his preliminary hearing order, finding that Frank was an employee of W.E.B. at the time of his injury and that Frank's accident arose out of and in the course of his employment with W.E.B. Summarizing Keith's testimony as being that W.E.B. "was an umbrella limited liability company and that 'Home of the Green Team' and 'Seasonal Lighting' were names that the limited liability company used," the ALJ concluded that W.E.B. was the proper respondent for the workers compensation proceedings and that W.E.B. met the payroll threshold to invoke coverage under the Act. Thus, the ALJ ruled that if Frank filed an amended application for hearing naming W.E.B. as the respondent, the Fund must provide authorized medical treatment for Frank's injuries, pay Frank's outstanding medical bills related to the work accident, and pay Frank TTD benefits for the period from November 18, 2016 to April 18, 2017. Frank then filed an amended application for hearing naming W.E.B. as the respondent.

4

The Fund appealed the preliminary hearing order to the Board, arguing that insufficient evidence supported the ALJ's findings that coverage existed under the Act. Board member Gary M. Korte issued an order finding that on the limited record available at the time, Frank was an employee of W.E.B. Korte also found that the available evidence supported the ALJ's finding that the family member exclusion sometimes applicable when calculating payroll did not apply in this situation. Thus, W.E.B. met the payroll requirement for coverage and Korte affirmed the preliminary hearing order.

On December 20, 2018, the Fund conducted an evidentiary deposition of Keith to clarify the nature and relationship of his various business operations. Keith confirmed that Green Team and Seasonal Lighting were d/b/a's. Counsel for the Fund asked, "What is Home of the Green Team?" and Keith responded, "It was a website. Just our website." When asked to describe the relationship between Seasonal Lighting and W.E.B., Keith said that "W.E.B. Enterprises was the LLC that we used to do lawn work and maid work. Seasonal Lighting is something totally different from that."

Keith emphasized that checks for Seasonal Lighting were made out to him personally and that none of that money ever went into the bank account for W.E.B. Keith also explained that W.E.B. did not act as corporate entity over Seasonal Lighting. Keith identified five people who worked for Seasonal Lighting in November 2016: himself, Brandon, Whitney, Meyers, and Frank. Keith stated that the truck Brandon used while performing Seasonal Lighting work belonged to Brandon personally and bore a magnet that said Seasonal Lighting and showed Keith's personal cell phone number; it did not refer to W.E.B. Keith reaffirmed his preliminary hearing testimony that in 2016, Seasonal Lighting's payroll to Myers and Frank was about $2,500 and in 2017 payroll to non-family members was $2,400. He also reaffirmed his preliminary hearing testimony that Frank was not paid for his 2016 work with a check from W.E.B.

5

As for his conflicting preliminary hearing testimony about W.E.B. being the corporate entity over Seasonal Lighting and Home of the Green Team, Keith said, "When we started talking about the W.E.B. and the d/b/a's and the things of that nature, I wasn't a hundred percent positive on—I wasn't sure." He said that his agreement at the preliminary hearing that W.E.B. was the corporate entity over the other companies was "because I didn't fully understand what that question meant." When asked at the deposition if "Seasonal Lighting [is] a doing-business-as name for you, Eric Keith, or is it a d/b/a for W.E.B.," Keith responded, "Strictly me, Eric Keith."

By the time of Keith's deposition, W.E.B. had forfeited its LLC status for failure to file annual reports. Keith conceded at the deposition that he only recalled paying for an annual report once, he filed the articles of organization with help from LegalZoom.com, he used his father's residential address as the address for W.E.B., and W.E.B. did not pay dividends, own assets, or maintain record books. Still, Keith asserted that W.E.B.'s bank accounts were not used to purchase Christmas lights. Keith also testified that W.E.B. had no payroll records for 2015, 2016, or 2017, nor did it ever file a tax return.

On May 24, 2019, the ALJ issued his Award, based on a record that included the preliminary hearing transcript and the transcript of Keith's December 2018 deposition. After making extensive factual findings about Frank's injuries and ongoing impairment, the ALJ found:

> "At the Preliminary Hearing Mr. Keith testified that the Christmas light stringing business was operated as part of WEB. At the Preliminary Hearing, Mr. Keith did make any distinction between the operation of Seasonal Lighting and Home of the Green Team. But in his deposition, Mr. Keith changed his testimony and said that the Christmas light stringing business was not operated as part of WEB and was instead his personal enterprise.
> "The Court does not find Mr. Keith's deposition testimony credible. It appears that Mr. Keith's motivation for changing his testimony is to avoid liability for WEB and

6

the Fund for payment of the cost of workers compensation benefits for the Claimant. No documentation, such as bank records or tax returns, were produced to support the new claim that the Claimant was paid by Mr. Keith personally."

Thus, the ALJ found that Frank "was an employee of W.E.B. at the time of the accident." The ALJ also found that payroll to family members should be part of calculating W.E.B.'s payroll to determine whether coverage under the Act exists and W.E.B.'s 2016 payroll met the required threshold. Since W.E.B. had no workers compensation insurance, the ALJ found that "the Fund is responsible for paying workers compensation benefits to [Frank]." After making additional findings not germane to this appeal, the ALJ awarded Frank $5,786.96 in TTD compensation and $56,621.50 in permanent partial disability compensation for a total award of $62,408.46.

The Fund appealed to the Board. After hearing oral argument, the Board issued its order on December 18, 2019. As relevant to this appeal, the Board found that "Seasonal Lighting is the entity [Frank] was working for when he was injured." The Board also explained:

> "The only link[] between Seasonal Lighting and W.E.B. is that Eric Keith is involved in both entities and non specific testimony that all the d/b/a entities are part of W.E.B.
>       . . . .
> "[T]here is no documentary evidence or testimony contradicting Eric Keith's assertion that Seasonal Lighting was no more than a personal operation of Eric Keith's. There are no bank records or checks that show money from Seasonal Lighting customers paid to anyone other than Eric Keith. There are no checks or other documents showing that W.E.B. paid [Frank] for his services in November 2016. This lack of documentary evidence is part of the basis for the ALJ finding that Eric Keith is not credible. The lack of documents simply shows Eric Keith is a poor record keeper. Documents cannot be produced that don't exist. It is not a persuasive basis to find Eric Keith is not credible.
>       "The evidence is insufficient to conclude [Frank] worked for W.E.B. While Eric Keith's testimony at the preliminary hearing seemingly contradicts his deposition

testimony, it is not specific as it relates to Seasonal Lighting and insufficient to contradict Eric Keith's specific [deposition] testimony about the operation of Seasonal Lighting."

The Board found that Seasonal Lighting's payroll, considered alone, did not meet the amount required for coverage under the Act. Thus, the Board reversed the ALJ's award and denied Frank's claim for benefits. One Board member dissented, finding that the key issue was one of fact and the ALJ had a chance to observe Keith. The dissenting member found that although "reasonable minds can differ on this point," he would affirm the ALJ's award. Frank timely appealed the Board's order.

ANALYSIS

Frank articulates three issues on appeal: (1) "Whether the [Board] erred in finding that [Frank] was not employed by W.E.B."; (2) "Whether the [Board] erred in Concluding That Seasonal Lighting was completely separate from [W.E.B.] even though it found that [W.E.B.] was 'doing business as' Seasonal Lighting"; and (3) "Whether the [Board] erred in its understanding of corporate structure and business entities when it concluded that Seasonal Lighting was a 'd/b/a' of [W.E.B.] but that the two were distinct and separate entities." The Fund has structured its appellate brief to respond to each issue individually. But all of these issues challenge one underlying ruling: the Board's finding that Seasonal Lighting, not W.E.B., was Frank's employer.

Frank argues that the Board erred by finding that W.E.B. was not his employer because the evidence supported a finding that W.E.B. was an umbrella corporation under which Seasonal Lighting operated. He points out the differences between Keith's preliminary hearing testimony and his deposition testimony, and he argues that the Board erroneously "rewarded" Keith for his changing testimony despite his lack of credibility. Finally, he argues that the Board's finding that Seasonal Lighting was a d/b/a means that Seasonal Lighting *is* W.E.B., so the Board erred in holding that they were two separate

8

entities. Frank contends W.E.B.'s payroll—not Seasonal Lighting's payroll—controls whether the Act provides coverage and, since W.E.B.'s payroll meets the statutory threshold for coverage, the Board erred in reversing the ALJ's award.

The Fund asserts that the Board considered the differences in Keith's testimony and had sufficient evidence to find that W.E.B. did not employ Frank. The Fund also contends that because W.E.B. did not follow corporate formalities, it is not a legitimate corporate entity so that salaries W.E.B. paid to Keith and his family members would not be part of the payroll calculation to determine coverage under the Act.

"The Board's decision is subject to review under the Kansas Judicial Review Act [(KJRA]), K.S.A. 2018 Supp. 77-601 et seq. The party challenging it bears the burden of providing the agency action was invalid. See K.S.A. 2018 Supp. 77-621(a). The reviewing court may grant relief only for statutorily enumerated reasons, which include two relevant for this appeal:  the agency erroneously interpreted or applied the law, and the agency action was based on a factual determination not supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole. K.S.A. 2018 Supp. 77-621(c). The statutes further provide:

"'"[I]n light of the record as a whole" means that the adequacy of the evidence in the record before the court to support a particular finding of facts shall be judged in light of all the relevant evidence in the record cited by any party that detracts from such finding as well as all of the relevant evidence in the record . . . cited by any party that supports such finding, including any determinations of veracity by the presiding officer who personally observed the demeanor of the witness and the agency's explanation of why the relevant evidence in the record supports its material findings of fact. In reviewing evidence in light of the record as a whole, the court shall not reweigh the evidence or engage in de novo review.' K.S.A. 2018 Supp. 77-621(d).

". . . The determination of whether the Board's findings of fact are supported by substantial competent evidence is a question of law." *Estate of Graber v. Dillon Companies*, 309 Kan. 509, 513-14, 439 P.3d 291 (2019).

9

When determining whether sufficient evidence supports the Board's factual findings, this court must consider "'any determinations of veracity by the presiding officer who personally observed the demeanor of the witness.'" *Lake v. Jessee Trucking*, 49 Kan. App. 2d 820, 836, 316 P.3d 796 (2013) (quoting K.S.A. 2012 Supp. 77-621[d], which remains unchanged today). If the Board disagrees with a credibility determination made by the ALJ, the Board "'should give its reasons for disagreeing,'" and this court on review "will then 'consider the agency's explanations as to why the relevant evidence in the record supports its material factual findings.'" 49 Kan. App. 2d at 836 (quoting *Kotnour v. City of Overland Park*, 43 Kan. App. 2d 833, 837, 233 P.3d 299 [2010]). "For this court to fairly consider an agency's position should it disagree with a hearing officer's credibility determination, an explanation of the agency's differing opinion is generally needed." 43 Kan. App. 2d at 837.

Frank does not directly attack the Board's reasons for disagreeing with the ALJ's credibility finding. In any event, the Board adequately explained its reasons for disagreeing with that finding—Keith's deposition testimony was more specific about the nature and relationship of his business operations and there was no documentary or other direct evidence to contradict Keith's deposition testimony. During workers compensation proceedings, "[t]he burden of proof shall be on the claimant to establish the claimant's right to an award of compensation and to prove the various conditions on which the claimant's right depends." K.S.A. 2020 Supp. 44-501b(c).

Frank points out that Keith agreed at the preliminary hearing that W.E.B. was "'the corporate entity over all of these D/B/As.'" While Frank's recitation of Keith's preliminary hearing testimony is accurate, he fails to acknowledge Keith's testimony at his evidentiary deposition, which may be viewed as a clarification of his preliminary hearing testimony. Frank's evidentiary deposition testimony covered over 40 pages compared to his brief preliminary hearing testimony. The Board gave greater weight to

the deposition testimony and this court does not reweigh evidence when reviewing administrative proceedings. See *Estate of Graber*, 309 Kan. at 513.

Next, Frank makes the related argument that Keith was not credible, as seen by his inconsistent testimony, which Frank contends changed because Keith realized the legal effect of his preliminary hearing testimony. Frank asserts that "both the ALJ and the Appeals Board found Mr. Keith to not be credible," and he argues that the Board erroneously "rewarded" Keith for his changing testimony. We note that although the Board observed that Keith was "a less than candid witness," the Board's order did not expressly find Keith not credible. In any event, the Board considered Keith's changing testimony and it observed that Keith's preliminary hearing testimony was more general, while his deposition testimony was more specific.

As to the lack of documents supporting Frank's claim that Keith paid Frank directly for his work, which the ALJ relied on to find Keith not credible, the Board found the lack of documentation simply showed that Keith is a poor record keeper, not that his deposition testimony should not be believed. In other words, the Board properly held the lack of documentary evidence against Frank, who had the burden of proof to establish the right to an award, rather than holding the lack of evidence against W.E.B.

Finally, Frank argues that "[w]hen the Appeals Board concluded that 'Seasonal Lighting' was a 'D/B/A,' what they were really finding was that Seasonal Lighting ***was*** W.E.B. Enterprises operating under a different name or trade name." But Frank misreads the Board's order. In the section of its order titled "Principles of Law and Analysis," the Board found that "[t]here were two d/b/a entities: Home of the Green Team and Seasonal Lighting." The Board noted that no documentary evidence or testimony of record contradicted "Keith's assertion that Seasonal Lighting was no more than a personal operation of Eric Keith's." Although the Board could have more clearly articulated its

11

finding that Seasonal Lighting was a d/b/a of Keith personally and not a d/b/a of W.E.B., the Board's order makes clear that Seasonal Lighting and W.E.B. are separate entities.

In sum, the Board found that Frank was an employee of Seasonal Lighting based on Keith's deposition testimony about the nature and relationship of his business operations and that Seasonal Lighting was a separate entity from W.E.B. The Board gave reasons for disagreeing with the ALJ's witness credibility determination and its findings are supported by evidence that is substantial in light of the record as a whole. We do not reweigh the evidence under our standard of review. Based on the arguments Frank has presented to us on appeal, we have no grounds to overturn the Board's order.

Affirmed.

\* \* \*

ATCHESON, J., concurring:  Given how the parties have framed and argued the issues on appeal, I concur in the judgment affirming the Kansas Workers Compensation Appeals Board. James Frank bore the burden of establishing the Board erred, and he has not done so. See K.S.A. 77-621(a)(1). James has asked us to reweigh the evidence to reverse the Board's conclusion about the relationship between Seasonal Lighting and W.E.B. Enterprises, LLC. But he has not developed an argument the Board itself erred in rejecting the Administrative Law Judge's contrary assessment of the evidence that included witness credibility determinations—a different and (in my view) much closer question.