No. 122,905[1]

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

GERLINE ZIMERO,
*Appellant*,

v.

TYSON FRESH MEATS, INC.,
*Appellee*.

SYLLABUS BY THE COURT

1.

When establishing an impairment rating in a workers compensation case for work injuries occurring after January 1, 2015, any reference to the Fourth Edition of the American Medical Association Guides is irrelevant. The Sixth Edition of the American Medical Association Guides is the starting point for work injuries occurring after January 1, 2015, and is statutorily required.

2.

In a workers compensation case, an impairment rating established under the Sixth Edition of the American Medical Association Guides for a work injury must be supported by competent medical evidence.

Appeal from Workers Compensation Board. Opinion filed July 16, 2021. Affirmed.

*Scott J. Mann*, of Mann Wyatt & Rice, LLC, of Hutchinson, for appellant.

*Gregory D. Worth*, of McAnany, Van Cleave, & Phillips P.A., of Kansas City, for appellee.

[1]**REPORTER'S NOTE**:  Previously filed as an unpublished opinion, the Supreme Court granted a motion to publish pursuant to Rule 7.04 (2021 Kan. S. Ct. R. 46). The published opinion was filed with the Clerk of the Appellate Courts on October 1, 2021.

Before ARNOLD-BURGER, C.J., GARDNER and ISHERWOOD, JJ.

ARNOLD-BURGER, C.J.: Gerline Zimero seeks judicial review of the Workers Compensation Board's (Board) decision finding she sustained a 3% permanent partial impairment to the body as a whole based on injuries to her upper back, neck, and shoulders arising in the course of her employment at Tyson Fresh Meats, Inc. (Tyson). She contends the Board ignored evidence that the impairment rating under the Fourth Edition of the American Medical Association (AMA) Guides (Fourth Edition) was 5%, instead adopting the 3% impairment rating based on the Sixth Edition of the AMA Guides (Sixth Edition). After a careful review of the issues presented, we affirm the Board's decision.

FACTUAL AND PROCEDURAL HISTORY

Zimero began working for Tyson in November 2016, and her job entailed removing bones from meat. Three months later, Zimero reported an injury at work to her shoulders, right arm, and upper back while she was using an electronic whizard knife. Tyson then moved her into a light duty position and provided some initial treatment. She filed a formal workers compensation claim in June 2017.

In July 2017, Zimero first consulted with an orthopedic surgeon, Dr. Pat Do. The results of MRIs performed on her shoulders showed the right shoulder had some bone bruising, but the left shoulder was normal. Zimero received a cortisone injection and underwent physical therapy over the course of a few follow-up appointments. Based on her progress up to December 2017, Dr. Do believed Zimero could return to work with no restrictions and that she would require no other medical treatment. In February 2018, Dr. Do evaluated her permanent impairment at a rating of 0% based on the Sixth Edition.

2

In August 2018, an administrative law judge (ALJ) for the Division of Workers Compensation ordered an independent medical evaluation (IME) with Dr. Vito Carabetta. Dr. Carabetta evaluated Zimero in October 2018. After reviewing her medical history and performing a physical examination, he diagnosed her with "regional fibromyositis in the bilateral upper trapezius muscle area." Dr. Carabetta evaluated her impairment under the AMA Guides using both the Fourth and Sixth Editions. He rated her as having 5% permanent partial impairment under the Fourth Edition, and as having 3% permanent partial impairment under the Sixth Edition. In the report, Dr. Carabetta explained that while Zimero's condition normally placed her at 2% impairment under the Sixth Edition, he increased the rating to a maximum of 3% based on her physical examination.

The ALJ ultimately issued an award in November 2019, finding Zimero had suffered a 3% permanent partial impairment to her body as a whole. See K.S.A. 2019 Supp. 44-510e(a)(2)(A)-(B). The ALJ adopted Dr. Carabetta's opinions as credible, specifically noting that Dr. Carabetta's IME was the most recent examination of Zimero.

Zimero appealed to the Board and argued in a written brief that the ALJ erred in rejecting a claim for additional 6% functional impairment based on an unproven diagnosis of bilateral carpal tunnel syndrome. The Board affirmed the ALJ's award in April 2020, finding Zimero had not shown her employment at Tyson caused her carpal tunnel syndrome.

Zimero seeks judicial review of the Board's decision.

ANALYSIS

Zimero argues the Board erred by approving the ALJ's award setting her functional impairment rating at 3% based on the Sixth Edition. Zimero relies mainly on *Johnson v. U.S. Food Service*, 312 Kan. 597, 602, 478 P.3d 776 (2021), in which the

3

Kansas Supreme Court interpreted K.S.A. 2019 Supp. 44-510e(a)(2)(B) as setting the "starting point" for determining the impairment rating as the Sixth Edition for injuries occurring after January 1, 2015, but still requiring proof by competent medical evidence to support the final rating. She asserts the ALJ and Board incorrectly interpreted this statute as *mandating* the use of the Sixth Edition and asks this court to reverse and remand with instructions for the Board to determine her impairment rating by considering whether a Fourth Edition impairment rating constitutes competent medical evidence.

*We first must examine whether Zimero has properly preserved this issue for appeal.*

Parties in workers compensation appeals are limited to raising issues on appeal that were properly before the Board. See *Linenberger v. Kansas Dept. of Revenue*, 28 Kan. App. 2d 794, 797, 20 P.3d 1290 (2001). The Board only has the authority to review "questions of law and fact as presented and shown by a transcript of the evidence and the proceedings as presented, had and introduced before the administrative law judge." K.S.A. 2020 Supp. 44-555c(a). Based on a review of Zimero's brief to the Board, she did not challenge Dr. Carabetta's assessment of a 3% body as whole (BAW) award under the Sixth Edition for her upper back injury. Instead, when Zimero appealed the ALJ's award to the Board, she asked the Board to reconsider a bilateral carpal tunnel syndrome injury that the ALJ had rejected. Zimero requested the Board to award an additional 6% impairment rating for the bilateral carpal tunnel syndrome injury for a total of 9%, all under the Sixth Edition. As a result, the Board's decision noted the "primary issue" was whether Zimero had shown that working at Tyson caused her carpal tunnel syndrome and found she had not sustained her burden of proof on that point.

So based on the record, Zimero did not challenge the 3% BAW rating under the Sixth Edition before the Board and therefore did not preserve the challenge for appeal. As a result, this court could decline to review Zimero's current challenge to her functional impairment rating for failing to explain why we should consider it for the first time on

4

appeal. See Supreme Court Rule 6.02(a)(5) (2021 Kan. S. Ct. R. 35); see also *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018) (cautioning that Rule 6.02 would be strictly enforced, and parties risk a ruling that their claim has been waived or abandoned).

That said, we review workers compensation appeals under the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq., which permits a party to obtain judicial review of a new issue on appeal where "the interests of justice would be served by judicial resolution of an issue arising from . . . [a] change in controlling law occurring after the agency action." K.S.A. 2020 Supp. 77-617(d)(1). The ALJ and Board both issued their rulings before the Kansas Supreme Court issued a decision in *Johnson*. *Johnson* specifically overruled this court's opinion finding that K.S.A. 2019 Supp. 44-510e(a)(2)(B) was unconstitutional on its face. See *Johnson v. U.S. Food Service*, 56 Kan. App. 2d 232, 257-58, 427 P.3d 996 (2018), *overruled by* 312 Kan. 597, 603, 478 P.3d 776 (2021). Thus, any changes in the law because of *Johnson* occurred after the agency action. Whether *Johnson* constitutes a "change in controlling law" is a harder question. But for purposes of this appeal we will assume, without deciding, that it is a change in the law and address the merits of Zimero's claim.

*Our standard of review is mixed.*

The KJRA governs this court's review of cases arising under the Workers Compensation Act (the Act). K.S.A. 2020 Supp. 44-556(a). The standard of review varies depending on the issue raised. See K.S.A. 77-621 (defining and limiting scope of review of administrative decisions under KJRA).

When tasked with reviewing the Board's factual findings, this court reviews those findings in light of the record as a whole to determine whether the Board's factual determinations are supported by substantial evidence. "This analysis requires the court to (1) review evidence both supporting and contradicting the agency's findings; (2) examine

5

the presiding officer's credibility determination, if any; and (3) review the agency's explanation as to why the evidence supports its findings. The court does not reweigh the evidence or engage in de novo review. [Citations omitted.]" *Williams v. Petromark Drilling*, 299 Kan. 792, 795, 326 P.3d 1057 (2014).

When an appellant argues the Board erroneously applied the law to undisputed facts appellate courts exercise de novo review. *Mera-Hernandez v. U.S.D. 233*, 305 Kan. 1182, 1185, 390 P.3d 875 (2017). Likewise, "[w]hen exercising unlimited review on questions of statutory interpretation, an appellate court owes no deference to interpretations given to the Act by the [Board]." *Estate of Graber v. Dillon Companies*, 309 Kan. 509, Syl. ¶ 2, 439 P.3d 291 (2019).

*Zimero relies on the Kansas Supreme Court's recent decision in* Johnson.

In *Johnson*, 312 Kan. 597, the Kansas Supreme Court rejected this court's ruling that K.S.A. 2015 Supp. 44-510e(a)(2)(B) was unconstitutional. The court explained that requiring an impairment rating to be "based on" the Sixth Edition for injuries after January 1, 2015, did not alter the "primary substantive effect of the statute which is to define the extent of the injury to be a percentage of functional impairment 'as established by competent medical evidence.'" 312 Kan. at 601-02. Applying the rule of constitutional avoidance, our Supreme Court held that "[t]he key fact—percentage of functional impairment—must always be proved by competent medical evidence," with the applicable version of the AMA Guides serving as a "starting point" for any medical opinion. 312 Kan. at 603.

We can summarize Zimero's argument as follows:  the ALJ and Board erred in approving the 3% impairment rating under the Sixth Edition because they did not factor Dr. Carabetta's 5% impairment rating under the Fourth Edition into their determination. She essentially argues that to adequately consider "competent medical evidence" the

6

medical witness, the ALJ, and Board must compare the results under the Fourth Edition and the Sixth Edition and factor both into their decision. Instead, she claims that the ALJ and the Board interpreted the Sixth Edition rating as mandatory and did not require any competent medical evidence to support it. This argument is unpersuasive for two reasons.

1.  *Any reference to the Fourth Edition for injuries occurring after January 1, 2015, is irrelevant.*

First, Zimero misconstrues *Johnson* as allowing an ALJ or the Board to ignore the functional impairment rating provided by the Sixth Edition if they believe that the Fourth Edition impairment rating is more appropriate. The Legislature specifically chose to adopt the Sixth Edition as the new set of guidelines for injuries occurring after January 1, 2015. But as stated in *Johnson*, the impairment rating must still be supported by "competent medical evidence" with the Sixth Edition used as a starting point for the determination. See *Johnson*, 312 Kan. at 602. Based on *Johnson*, the Fourth Edition is irrelevant after January 1, 2015. We start with the Sixth Edition and then use competent medical evidence to increase or decrease that guideline amount. Parties and courts do not choose between using the Fourth Edition or the Sixth Edition. The Sixth Edition is statutorily required.

2.  *Dr. Carabetta's impairment rating was supported by competent medical evidence.*

Second, as Tyson points out, Zimero does not contest any of the evidence offered in this case. Dr. Carabetta testified extensively about the considerations that led to his 3% impairment rating under the Sixth Edition. Moreover, Dr. Carabetta did not express any preference for either version, he simply stated that he evaluated Zimero's impairment under the guidelines in both the Fourth and Sixth Editions by agreement of the parties. Dr. Carabetta's testimony suggests this approach was because of the Court of Appeals

7

*Johnson* panel's decision finding the use of the Sixth Edition was unconstitutional and not because one or both parties believed the Fourth Edition provided a more accurate picture of impairment.

Dr. Carabetta diagnosed Zimero with regional fibromyositis in the bilateral upper trapezius muscle area and constructed an initial impairment rating of 2% functional impairment to the body as a whole under the Sixth Edition. But based on a physical examination—during which Zimero exhibited subjective and inconsistent pain complaints—Dr. Carabetta decided to increase the rating to 3% permanent partial impairment to Zimero's body as a whole. The ALJ found Dr. Carabetta's opinions to be credible—which the Board affirmed—and Zimero does not appear to be contesting Dr. Carabetta's credibility or the facts leading to his opinion. Because Zimero argues that the Board erroneously applied the law to undisputed facts we exercise de novo review. *Mera-Hernandez,* 305 Kan. at 1185. We conclude that the functional impairment rating adopted by the Board complied with K.S.A. 2020 Supp. 44-510e(a)(2)(B). It was consistent with the Sixth Edition and was supported by competent medical evidence. Accordingly, the decision of the Board is affirmed.

Affirmed.