No. 123,430

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

GUADALUPE GARCIA,
*Appellant*,

v.

TYSON FRESH MEATS, INC.,
*Appellee*.


SYLLABUS BY THE COURT


1.

When analyzing whether the Workers Compensation Board erroneously applied the law to undisputed facts, appellate courts exercise de novo review.


2.

The Court of Appeals reviews an award entered by the Workers Compensation Board under the Kansas Judicial Review Act. If it is found that the Board misapplied the law, the Court of Appeals has the latitude to correct that error. It owes no deference to the Board's legal analyses or conclusions.


3.

In this case, the Board erred in entering an award based on a functional impairment rating derived solely from the Sixth Edition of the American Medical Association Guides to the Evaluation of Permanent Impairment (6th ed. 2008).

1

4.

In a workers compensation case, an impairment rating for a work injury must be supported by competent medical evidence. K.S.A. 2020 Supp. 44-510e(a)(2)(B).

5.

When establishing an impairment rating in a workers compensation case for work injuries occurring after January 1, 2015, the Sixth Edition of the Guides is simply the statutorily required starting point. The percentage arising from the use of the Guides alone is but a single factor in the overall assessment. Medical experts must then consider other available medical evidence to arrive at an accurate, comprehensive impairment rating.

6.

If, in a physician's expert medical opinion, the Guides state inaccurately an injured worker's functional impairment, they should supplement their evaluations with those tests, reports, or resources that they determine, in their professional expertise, will yield a more accurate result and one that embodies the full spectrum of competent medical evidence as contemplated by K.S.A. 2020 Supp. 44-510e(a)(2)(B).

7.

The impairment rating relied upon by the Board was the product of the evaluating physician's strict adherence to the Guides alone. Thus, the goal of the statute, that impairment ratings arise out of comprehensive, competent medical evidence, was not achieved in this case.

Appeal from Workers Compensation Board. Opinion filed January 28, 2022. Affirmed in part, reversed in part, and remanded with directions.

*Stanley R. Ausemus*, of Stanley R. Ausemus, Chartered, of Emporia, for appellant.

*Gregory D. Worth*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for appellee.

Before ATCHESON, P.J., BRUNS and ISHERWOOD, JJ.

ISHERWOOD, J.: Guadalupe Garcia appeals from the decision of the Kansas Workers Compensation Board (Board) finding that the injury she sustained during her employment resulted in only a 3% impairment to her body as a whole. Because the Board relied on a medical opinion that appears to have been exclusively based on the Sixth Edition of the American Medical Association (AMA) Guides to the Evaluation of Permanent Impairment (6th ed. 2008) to establish Garcia's functional impairment rating, rather than on a comprehensive view of competent medical evidence, we reverse the Board's decision and remand for a reexamination of her impairment rating and such other relief as may be appropriate.

A medical opinion confined to the Sixth Edition typically would not conform to the Kansas Supreme Court's recent reading of K.S.A. 2020 Supp. 44-510e(a)(2)(B), governing permanent impairment ratings, in *Johnson v. U.S. Food Service*, 312 Kan. 597, 603, 478 P.3d 776 (2021) (*Johnson II*). Although the Board did not have the benefit of *Johnson II* when it ruled, the court's determination applies to unresolved workers compensation cases, including Garcia's. The Board's decision, therefore, amounts to an erroneous interpretation of the law subject to review and correction under the Kansas Judicial Review Act (KJRA). K.S.A. 77-621(c)(4).

FACTUAL AND PROCEDURAL BACKGROUND

Garcia filed an application for a hearing with the Kansas Division of Workers Compensation in June 2017. She claimed a date of injury of January 12, 2017, and each working day thereafter.

At the time Garcia filed her application, K.S.A. 2016 Supp. 44-510e(a)(2)(B) provided that the extent of permanent partial general disability for injuries occurring on and after January 1, 2015, should be "based on the sixth edition of the American medical association guides to the evaluation of permanent impairment, if the impairment is contained therein." The Fourth Edition of the AMA Guides is the version applicable to injuries occurring prior to January 1, 2015. K.S.A. 2020 Supp. 44-510e(a)(2)(B).

Garcia was evaluated by three doctors, each of whom was specifically requested to provide a rating for Garcia's whole-body impairment under both the Fourth and Sixth Editions of the AMA Guides. Dr. John Estivo, D.O., rated Garcia at 5% under the Fourth Edition and 3% under the Sixth Edition. Dr. George Fluter, M.D., rated Garcia at 18% under the Fourth Edition and 19% under the Sixth Edition, and Dr. Terrence Pratt, M.D., rated Garcia at 8% under the Fourth Edition and 2% under the Sixth Edition.

In August 2018, a panel of this court ruled that use of the Sixth Edition of the AMA Guides for measuring permanent impairment of injured workers was unconstitutional and found that the Fourth Edition of the AMA Guides should be used in evaluating an injured worker's permanent impairment. *Johnson v. U.S. Food Service*, 56 Kan. App. 2d 232, Syl. ¶ 7, 427 P.3d 996 (2018) (*Johnson I*). That decision was appealed to the Kansas Supreme Court which granted review in February 2019.

As a result of this court's decision in *Johnson I*, Garcia requested that her regular hearing, scheduled for November 2019, be continued until the Kansas Supreme Court issued its decision on the appeal. The administrative law judge (ALJ) denied the motion, noting that June 2020 marked the expiration of the three-year time deadline for proceeding to a regular hearing as established by K.S.A. 2020 Supp. 44-523(f). Garcia filed a motion for reconsideration of her request for continuance in May 2020. The ALJ denied the motion, reasoning that absent agreement of the parties he needed to issue an award within the time frame established by K.S.A. 2020 Supp. 44-523(c).

4

The ALJ issued a decision in June 2020. He acknowledged this court's decision in *Johnson I*, and Garcia's argument that the Fourth Edition of the AMA Guides should apply. However, he concluded that the *Johnson I* decision was not binding precedent because the Kansas Supreme Court granted a petition for review. See Kansas Supreme Court Rule 8.03(k) (2020 Kan. S. Ct. R. 54).

On the merits, the ALJ considered the impairment ratings provided by Doctors Estivo, Pratt, and Fluter under the Sixth Edition of the AMA Guides. He concluded that Dr. Estivo's assessment of a 3% impairment was most persuasive based on the doctor's heightened familiarity with Garcia's claim (he examined her multiple times), as well as the overall credibility of his report and findings. The ALJ also found that because Garcia only had 3% impairment to her body as a whole, she was not eligible for work disability compensation. See K.S.A. 2020 Supp. 44-510e(a)(2)(C)(i) (stating that an employee may be eligible to receive work disability if "[t]he percentage of functional impairment determined to be caused solely by the injury exceeds 7 1/2% to the body as a whole or the overall functional impairment is equal to or exceeds 10% to the body as a whole in cases where there is preexisting functional impairment."). The ALJ did authorize Garcia to apply for future medical care benefits.

Garcia sought review by the Workers Compensation Appeals Board. She also moved to stay those proceedings until the Kansas Supreme Court issued its opinion in *Johnson II*.

The Board entered a written order in November 2020. First, it held that the matter could not be stayed as Garcia requested absent an agreement between the parties because K.S.A. 2020 Supp. 44-551(l)(1) required it to issue an order within 30 days of the appeal being fully submitted. The Board also held that it lacked the authority to enter a ruling on the constitutionality of the Guides. Third, the Board affirmed the ALJ's finding that Garcia suffered a 3% functional impairment to her body as a whole under the Sixth

5

Edition of the Guides. Finally, the Board reversed the ALJ's award of future medical benefits.

Garcia now brings the matter before us and requests that we review and analyze the propriety of the decisions entered by the Board, with the exception of its reversal of her award of future medical benefits. The latter issue was not appealed and, therefore, the Board's decision on that matter will not be reviewed or disturbed.

ANALYSIS

Garcia filed her brief in this appeal before the Kansas Supreme Court issued its decision in *Johnson II*. She raises four issues. First, she challenges the constitutionality of the 2013 amendment to K.S.A. 2020 Supp. 44-510e, which requires the use of the Sixth Edition of the Guides during the assessment of impairment for work injuries. Second, she argues that the ALJ and Board both erred by not continuing her case until the Kansas Supreme Court decided *Johnson II*. Third, she argues that the ALJ and Board erred in relying on the Sixth Edition of the Guides. Finally, she argues that the ALJ and Board erred in refusing to find that she suffered a work loss.

As we have indicated, we review a workers compensation award under the KJRA, K.S.A. 77-601 et seq., and may reverse an agency decision only in limited circumstances. See K.S.A. 77-621(c). If the Board materially misapplies the law, we may step in to correct that error. When analyzing whether the Workers Compensation Board erroneously applied the law to undisputed facts, appellate courts exercise de novo review. See *Mera-Hernandez v. U.S.D. 233*, 305 Kan. 1182, 1185, 390 P.3d 875 (2017). The controlling issue here is one of statutory construction, as filtered through the *Johnson II* decision, and, thus, presents a question of law. We owe no particular deference to the Board's legal analyses or determinations. *Estate of Graber v. Dillon Companies*, 309 Kan. 509, Syl. ¶ 2, 439 P.3d 291 (2019).

6

IS THE REQUIREMENT IN K.S.A. 2020 SUPP. 44-510e TO USE THE SIXTH EDITION OF THE AMA GUIDES DURING AN IMPAIRMENT ASSESSMENT UNCONSTITUTIONAL?

Garcia's first argument is that the amendment to K.S.A. 2020 Supp. 44-510e, requiring use of the Sixth Edition of the Guides as part of the analysis to assess the extent of permanent partial general disability for injuries sustained after January 1, 2015, is unconstitutional. As noted above, the Kansas Supreme Court rejected this argument in *Johnson II*. We are duty bound to follow Kansas Supreme Court precedent unless there is some indication of a departure from its previous position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). The court has issued no such signal related to its ruling in *Johnson*. As a result, we must reject Garcia's argument that use of the Sixth Edition of the Guides is unconstitutional.

DID THE ALJ AND THE BOARD ERR WHEN THEY DECLINED TO CONTINUE GARCIA'S CASE UNTIL THE SUPREME COURT ISSUED ITS OPINION IN *JOHNSON II*?

Garcia next asserts that the ALJ and the Board erred when they refused her request to continue this case until such time as the Kansas Supreme Court issued its decision in *Johnson II*. Garcia offers us only a single sentence on this point, stating that "[i]t goes without saying" that the ALJ "had the duty and obligation to continue the case until such time as the Supreme Court ruled on the case of *Johnson* . . . since the Court of Appeals had already ruled the use of the 6th Edition of the AMA Guides is unconstitutional." This argument falls far short of what is required to secure the relief Garcia seeks.

First, an issue on appeal before this court cannot "go[] without saying." A party has an obligation to advance a substantive argument in support of their position and buttress it with pertinent authority or risk a ruling that the issue is waived or abandoned. Garcia did not supply a standard of review, provide us with any pertinent rules or caselaw, or engage in any analysis of the issue. Simply put, she failed to substantiate her claim that the Board had a "duty and obligation" to stay the case. Her argument on this

7

point is properly considered abandoned. See *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017) (holding that a point raised incidentally in a brief and not argued therein is deemed abandoned).

DID ERROR OCCUR WHEN THE BOARD ADOPTED AN IMPAIRMENT RATING THAT WAS INFORMED SOLELY BY THE SIXTH EDITION OF THE GUIDES AT THE TIME IT WAS ESTABLISHED BY THE EVALUATING PHYSICIAN?

Three arguments remain in Garcia's appeal, all of which we believe can be resolved collectively through a comprehensive analysis:

- Did the ALJ and Board err in rendering an award for an impairment rating that arose solely from the evaluating physician's use of the Sixth Edition of the Guides;

- Did the ALJ and Board err in refusing to find that Garcia was entitled to work disability under K.S.A. 2020 Supp. 44-510e(a)(2)(C); and

- Should this case be remanded for a new comprehensive medical evaluation in light of the Kansas Supreme Court's decision in *Johnson II*.

Garcia's is not the first case to come before our court raising issues of this nature. Practitioners and injured workers alike have endeavored to navigate the course they are expected to travel following the adoption of the Sixth Edition of the Guides in the functional impairment calculus.

In *Pardo v. United Parcel Services*, 56 Kan. App. 2d 1, 422 P.3d 1185 (2018), an injured worker challenged the constitutionality of K.S.A. 2014 Supp. 44-510d(b)(23) as applied to his workers compensation claim. This statute mandated that for all work-related injuries occurring after January 1, 2015, the Sixth Edition of the Guides must be used during the rating process of a work-related injury to determine a worker's amount of

8

compensation. A panel of our court agreed with Pardo that the statute was unconstitutional as applied to him because it denied him a remedy guaranteed by the Kansas Constitution. 56 Kan. App. 2d at 25.

In *Johnson I*, 56 Kan. App. 2d at 257, a panel of this court concluded that K.S.A 2019 Supp. 44-510e(a)(2)(B) was unconstitutional on its face upon finding that adopting the Sixth Edition of the Guides violated due process and the remedy provision of the Kansas Constitutional Bill of Rights. In *Johnson II*, 312 Kan. at 603, our Supreme Court reversed and concluded that the statutory amendment did not create a due process violation because it did not unfairly alter the legal standard required for establishing an injured worker's functional impairment. Rather, the amendment merely updated the starting point for the medical opinion from the Fourth Edition to the Sixth.

The matter was next before us in *Guzzo v. Heartland Plant Innovations Inc.*, No. 121,811 2021 WL 3042264 (Kan. App. 2021) (unpublished opinion). In that case, Guzzo challenged the Sixth Edition driven impairment calculation accepted by the ALJ and the Board and argued it lacked the requisite evidentiary foundation. Guzzo asserted that the two entities should have had the option to choose between a rating arrived at under application of either the Fourth Edition or the Sixth depending upon which rating exhibited the greatest degree of veracity. Guzzo asserted that the Fourth Edition should have been an available option in her case because it was more credible than that submitted under the Sixth. A panel of this court found that Guzzo's proposal was not permissible in light of our Supreme Court's decision in *Johnson II*. *Guzzo*, 2021 WL 3042264, at *5.

*Zimero v. Tyson Fresh Meats, Inc.*, 61 Kan. App. 2d 1, 499 P.3d 1153 (2021), brought a similar issue before us. Zimero asserted that the ALJ and the Board ignored relevant evidence of a 5% impairment rating under the Fourth Edition of the Guides and instead erroneously chose to strictly adopt a 3% impairment rating under the Sixth

Edition. She took the position that to be truly accurate and proper the ultimate rating adopted by those two entities must be the product of a calculation which embodied both available percentages in some manner. In rejecting that contention, the *Zimero* court observed that the ALJ and the Board did not possess the latitude to formulate their own calculation procedure which implemented a combination of the percentages from the two editions. Rather, the statute specifically required use of one or the other as a starting point depending on the date of injury:

> "The Legislature specifically chose to adopt the Sixth Edition as the new set of guidelines for injuries occurring after January 1, 2015. But as stated in *Johnson*, the impairment rating must still be supported by "competent medical evidence" with the Sixth Edition used as a starting point for the determination. See *Johnson*, 312 Kan. at 602. Based on *Johnson*, the Fourth Edition is irrelevant after January 1, 2015. We start with the Sixth Edition and then use competent medical evidence to increase or decrease that guideline amount. Parties and courts do not choose between using the Fourth Edition or the Sixth Edition. The Sixth Edition is statutorily required." *Zimero*, 61 Kan. App. 2d at 6.

We recognize the force and effect the term "irrelevant" has the potential to convey. We will attempt to shed light on what we see as its meaning in *Zimero*. In doing so, we endeavor to place that statement in the context of the narrow point then being addressed in *Zimero* and suggest it should not be construed any more broadly. See *Illinois v. Lidster*, 540 U.S. 419, 424, 124 S. Ct. 885, 157 L. Ed. 2d 843 (2004) (Language in judicial opinions should be read "as referring in context to circumstances similar to the circumstances then before the Court and not referring to quite different circumstances that the Court was not then considering.").

It is important not to divorce the term from the context in which it is embedded. As we have indicated, the paragraph is specifically devoted to an explanation of the position our Supreme Court took in *Johnson II* regarding the Sixth Edition as the appropriate starting point for medical opinions in workers compensation matters. The

10

*Zimero* court simply clarified that under *Johnson II* "[w]e *start* with the Sixth Edition" then proceed to consideration of the other medical evidence available to arrive at an accurate, comprehensive rating. 61 Kan. App. 2d at 6. (Emphasis added.) Thus, under a fair reading of *Zimero* the Fourth Edition is only irrelevant with respect to that specific foundational step, the starting point, in the assessment process.

Garcia's case affords us the opportunity to further discern the intended operation of K.S.A. 2020 Supp. 44-510e(a)(2)(B) and build upon those cases preceding hers. In her quest for relief, Garcia takes a different tack than did Zimero. Where Zimero attempted to secure a rating that somehow reflected a marriage of the Fourth and Sixth Editions, Garcia advocates for us to simply conclude that the ALJ and Board erred in failing to solely rely on the available rating calculated in accordance with the Fourth Edition because the Sixth allegedly yielded a deficient and inaccurate result. We again look to the provision itself, as well as the opinion in *Johnson II*, to explain why Garcia's proposal must be rejected.

In trying to yield some measure of clarity, the *Johnson II* court focused on the plain language of the statute and cautioned against reading something into its wording not readily found within the text. The relevant provision in the statute states as follows:

> "The extent of permanent partial general disability shall be the percentage of functional impairment the employee sustained on account of the injury as established by competent medical evidence and based on the fourth edition of the American medical association guides to the evaluation of permanent impairment, if the impairment is contained therein, until January 1, 2015, but for injuries occurring on and after January 1, 2015, based on the sixth edition of the American medical association guides to the evaluation of permanent impairment, if the impairment is contained therein." K.S.A. 2020 Supp. 44-510e(a)(2)(B).

11

The *Johnson II* court deconstructed the statute a bit to highlight what it designated as its key language. In the court's opinion, to understand the intended operation of the provision, there must be an appreciation for the phrases "based on" and "competent medical evidence." 312 Kan. at 602.

The *Johnson II* court explained that the provision is most aptly classified as a "standard" which allows for more suppleness in its application than a "rule." 312 Kan. at 602. "Rules establish legal boundaries based on the presence or absence of well-specified triggering facts." Korobkin, *Behavioral Analysis and Legal Form: Rules vs. Standards Revisited*, 79 Or. L. Rev. 23, 25 (2000). "Standards, in contrast, require adjudicators (usually judges, juries, or administrators) to incorporate into the legal pronouncement a range of facts that are too broad, too variable, or too unpredictable to be cobbled into a rule." 79 Or. L. Rev. at 25. Consistent then with designation of the statute as a standard, *Johnson II* determined that through the Legislature's use of the phrase "based on" it signaled that the Sixth Edition of the Guides was to be used merely as the starting point for medical experts offering evaluations in workers compensation cases from which the "more important and decisive 'competent medical evidence'" would ultimately emanate. 312 Kan. at 602. Importantly, the court found that the statute "has never dictated that the functional impairment is set by guides." 312 Kan. at 603. Thus, according to *Johnson II*, the provision contemplates the use of an array of sources the medical expert considers professionally appropriate in arriving at an injured worker's functional impairment rating. See *Johnson*, 312 Kan. at 603.

Viewing functional impairment as the product of a comprehensive assessment is also consistent with the purpose of the Workers Compensation Act.

> "[W]orkers Compensation . . . involves a classic social trade-off or, to use a Latin term, a quid pro quo . . . What is given to the injured employee is the right to receive certain limited benefits regardless of fault . . . What is taken away is the employee's right to

12

recover full tort damages, including damages for pain and suffering, in cases in which there is fault on the employer's part." *Hughes Delivery Service, Inc. v. Zurich American Ins. Co.*, 547 U.S. 651, 662-63, 126 S. Ct. 2105, 165 L. Ed. 2d 110 (2006).

A process which ensures that all relevant information is represented in the impairment rating equation safeguards the injured worker's right to receive a "viable and sufficient substitute remedy" for the relinquishment of their ability to pursue a tort-based claim. See *Lemuz v. Fieser*, 261 Kan. 936, 959, 933 P.2d 134 (1997). This is particularly true given the paradigm shift between the Fourth and Sixth Editions.

The Fourth Edition was drafted in a way which exhibited a greater focus on the employment injury centric goal of the Workers Compensation Act. To the extent it included activities of daily living (ADL) within its rubric, it tended to focus on those which were readily transferrable to a workplace environment such as stooping, squatting, and lifting. AMA Guides Fourth Edition, p. 317.

By contrast, the Sixth Edition reflects an inversion of that way of thinking to some degree. That edition widened the lens to view individuals from the perspective of a standard person rather than against the particularities of an injured worker specifically, and the rigors commensurate with their line of work. The corresponding result injects ADL activities into the equation which generally lack any characteristics particular to that individual's employment:  for example, one's ability to complete their hygiene routine, eat unencumbered, or maintain positive sleep habits. Measuring an injured worker's disability in such a way, rather than in terms of their continued ability to successfully complete the job tasks they have historically performed, neglects to properly address the import of the injury and is counterintuitive to the purpose of the Act.

Moreover, the Sixth Edition seeks to enhance the standardization of the quantification of injuries to allow for greater uniformity in recovery across the spectrum

of claimants. AMA Guides Sixth Edition, pp. 1-2, 19-20. While two individuals suffering the same hand injury may occupy similar planes from an abstract, purely objective standpoint in that both may struggle to brush their teeth and tie their shoes, in the reality of the employment context that injury may impact the two in very different ways. For example, a person employed in a purely administrative capacity will experience very different and perhaps fewer employment challenges than a manual laborer such as Garcia. Accordingly, subjective work-related elements should be an integral part of the calculus if the ideology of the Act is to be preserved—to compensate the injured worker for the actual loss they have experienced.

In viewing K.S.A. 2020 Supp. 44-510e(a)(2)(B) as a standard which "set[s] the legal parameters . . . [yet] leaves work to be done" *Johnson II* observed that deficiencies in the assessment equation are avoidable. 312 Kan. at 602. The Supreme Court clarified that the foundational framework alone is articulated in the statute, and to develop a form around the framework the facts of each individual case must be fleshed out. This is because impairment is not dictated by strict adherence to the Guides in isolation, but through careful consideration of competent medical evidence in conjunction with the Guides. See *Johnson II*, 312 Kan. at 602-03. That is, it involves "facts that are too broad, too variable, or too unpredictable to be cobbled into a rule." *Behavioral Analysis and Legal Form: Rules vs. Standards Revisited,* 79 Or. L. Rev. at 25.

It is against this backdrop that we move into an analysis of Garcia's remaining claims. Again, Garcia was examined by three physicians, Doctors Estivo, Pratt, and Fluter, each of whom honored a request from counsel to provide a whole body impairment rating arising exclusively out of the Fourth Edition and exclusively out of the Sixth Edition of the Guides. The ALJ and Board found that Dr. Estivo's assessment of impairment was most persuasive. We are of the opinion that this conclusion cannot be permitted to stand. When the overall purpose of the Workers Compensation Act, to ensure that injured workers are adequately compensated for their loss of earning power, is

14

coupled with the directives discussed in *Johnson II*, a medical doctor's impairment rating must be formulated following a comprehensive review of the worker's condition. Stated another way, the Sixth Edition provides the starting point for the medical opinion and the assessment then proceeds to consideration of any competent medical evidence the doctor determines to be relevant in calculating an accurate impairment rating. That is, while the Legislature modified the starting point it did not correspondingly render examinations and tests performed under the Fourth Edition obsolete. To preserve the efficacy of the Act, there must be an eye focused on a worker's capacity to function in the specific employment role unique to them: that is, what they can or should do, or not do. In our opinion, to arrive at such a conclusion, the examining physician does not simply walk in lockstep with the recommended step by step procedure set out in the Guides, but incorporates whatever exams, patient reports, tests, or research that their training and experience directs them to use so they might arrive at a fair and comprehensive result.

In some circumstances, an examining physician might conclude the Sixth Edition provides a sufficient basis alone to make a medically competent assessment of a worker's impairment rating. By the same token, however, in other circumstances, the Sixth Edition may be insufficient, requiring the examining physician to consider other reliable sources to make a professionally informed rating. And, as with other things in the workers compensation field, medical experts may disagree on the universe of information underpinning "competent medical evidence" in a particular case.

The record before us does not allow for the conclusion that the comprehensive procedure articulated by K.S.A. 2020 Supp. 44-510e(a)(2)(B) and clarified by our Supreme Court in *Johnson II* was adhered to by the physicians in Garcia's case. To the contrary, Dr. Fluter's deposition testimony reflects that he strictly adhered to the Fourth and Sixth Editions in this matter, per counsel's request, by relying on the "appropriate" sections and tables in the Guides to arrive at a rating for Garcia. There is no indication his conclusion was informed by any additional resources. The same holds true for Dr.

15

Estivo's assessment which yielded the rating ultimately adopted by the Board. Notably, Dr. Fluter remarked in his report that additional information may or may not alter his expressed conclusion. It cannot be said that the goal of the statute was accomplished here. The percentage arising from the use of the Guides alone is but a single factor in the assessment; the ultimate rating does not rise and fall upon it. See *Johnson II*, 312 Kan. at 603 (the statute has "never dictated that the functional impairment is set by [the Guides]").

We, therefore, conclude the ALJ and the Board erred in entering an award based on a functional impairment rating derived solely from the Sixth Edition of the Guides. Thus, Garcia's case must be remanded for reevaluation consistent with the Supreme Court's directive in *Johnson II* that ratings be grounded in a comprehensive assessment of competent medical evidence. This may require the examining physicians to revise their assessments of Garcia's functional impairment to take into account additional information they believe would augment the Sixth Edition as competent medical evidence pertinent to her work injury. In the event that need arises, the evaluating physicians' starting point for Garcia's rating must be the Sixth Edition. If, in a physicians' expert medical opinion, the Guides provide too narrow a view of Garcia's ability to work and a similarly understated functional impairment, they may (and should) augment their evaluations using those tests, exams, reports, or resources they determine in their professional expertise will yield a more accurate result. That includes information and guidance that may be gleaned from the Fourth Edition or other sources they consider reliable or authoritative within their profession.

Consistent with *Zimero*, we are not suggesting that physicians can calculate a rating under the Fourth Edition, a second rating under the Sixth, and then simply combine the two using some arithmetic formula. Such a practice would deviate from both a conclusion relying on competent medical evidence and the holding in *Johnson II*. On remand, the physician must take those steps necessary to see that Garcia's impairment

16

rating is based on a medical evaluation that encompasses relevant and competent evidence drawn from outside the Sixth Edition if that would be proper in the examining physician's opinion. Because a reevaluation consistent with our remand and *Johnson II* could prompt a new impairment rating, whether Garcia is entitled to work disability under K.S.A. 2020 Supp. 44-510e(a)(2)(C) will also need to be revisited once her proper impairment rating is established.

Affirmed in part, reversed in part, and remanded with directions.

\* \* \*

BRUNS, J., concurring in part and dissenting in part:  Although I concur with much of the majority's opinion, I respectfully dissent from the conclusion that the Workers Compensation Board erred in establishing Garcia's functional impairment rating by relying on a medical opinion that was purportedly based exclusively on the Sixth Edition of the American Medical Association (AMA) Guides to the Evaluation of Permanent Impairment (6th ed. 2008). I would conclude that the Board correctly interpreted and applied Kansas law in this action. Likewise, I would conclude that there is competent medical evidence in the record—when viewed as a whole—to support the Board's decision.

The 2013 Kansas Legislature amended K.S.A. 44-510e(a)(2)(B) to provide:

"The extent of permanent partial general disability shall be the percentage of functional impairment the employee sustained on account of the injury as established by competent medical evidence and . . . for injuries occurring on and after January 1, 2015, based on the sixth edition of the American medical association guides to the evaluation of permanent impairment, if the impairment is contained therein." L. 2013, ch. 104, § 9; K.S.A. 44-510e(a)(2)(B).

17

In holding the 2013 amendment to K.S.A. 44-510e(a)(2)(B) to be constitutional, the Kansas Supreme Court held that "the language added in 2013 does not change the essential legal standard for determining functional impairment." *Johnson v. U.S. Food Service*, 312 Kan. 597, 603, 478 P.3d 776 (2021) (*Johnson II*). As our Supreme Court explained, the statute "still requires that ratings be 'established by competent medical evidence'" and the added statutory language "merely reflect[s] an update to the most recent set of guidelines—which serve as a starting point for any medical opinion." 312 Kan. at 603. Consequently, other than updating the edition of the AMA Guides to be used in rendering a medical opinion regarding functional impairment, "the legal substance" of the statute "remains the same as it has been." 312 Kan. at 603.

Unfortunately, the majority's opinion ventures precariously close to the realm of policy making under the guise of interpreting K.S.A. 44-510e(a)(2)(B). This is particularly true in that portion of the opinion where the majority discusses the differences between the Fourth and Sixth Editions of the AMA Guides. Of course, "'questions of public policy are for legislative and not judicial determination, and where . . . there is no constitutional impediment, the question of the wisdom, justice, or expediency of the legislation is for that body and not for the courts.'" *State v. Spencer Gifts*, 304 Kan. 755, 765, 374 P.3d 680 (2016) (quoting *State ex rel. Fatzer v. Kansas Turnpike Authority*, 176 Kan. 683, 695, 273 P.2d 198 [1954]). Accordingly, I would suggest that any dissatisfaction with what the majority calls a "paradigm shift between the Fourth and Sixth Editions" involves a policy issue that should appropriately be addressed by the Kansas Legislature and not by the courts.

Several panels of our court have previously held that the Sixth Edition of the AMA Guides—and not the Fourth Edition—applies in workers compensation actions in which the claimed injury occurred on or after January 1, 2015. In a published opinion authored by Chief Judge Karen Arnold-Burger, a panel of our court held that "[w]hen establishing an impairment rating in a workers compensation case for work injuries

18

occurring after January 1, 2015, any reference to the Fourth Edition of the American Medical Association Guides is irrelevant." *Zimero v. Tyson Fresh Meats*, 61 Kan. App. 2d 1, Syl. 1, 499 P.3d 1153 (2021). Chief Judge Arnold-Burger explained that under the current version of the statute, "[w]e start with the Sixth Edition and then use competent medical evidence to increase or decrease that guideline amount. Parties and courts do not choose between using the Fourth Edition or the Sixth Edition. The Sixth Edition is statutorily required." 61 Kan. App. 2d at 6.

Furthermore, in *Guzzo v. Heartland Plant Innovations Inc.*, No. 121,811, 2021 WL 3042264, at *5 (Kan. App. 2021) (unpublished opinion)—which was heard by the same panel that heard *Zimero*—it was held that in evaluating workers compensation claims arising out of an injury occurring on or after January 1, 2015, "the Sixth Edition and not the Fourth Edition applies." More recently, in *Morris v. Shilling Construction Co.*, No. 123,297, 2021 WL 5751704, at *13 (Kan. App. 2021) (unpublished opinion), another panel of our court expressed "no reservations about adopting the *Zimero* court's clarification of our Supreme Court's *Johnson* precedent to reject [the] assertion that the Board violated K.S.A. 2020 Supp. 44-510e(a)(2)(B)'s plain language by solely considering [the physician's] impairment ratings under the Sixth Edition . . . ." Similarly, based on the statutory language found in K.S.A. 44-510e(a)(2)—as well as on the holdings in *Johnson II*, *Zimero*, *Guzzo*, and *Morris*—I would reject Garcia's argument in this appeal that the Workers Compensation Board erroneously interpreted the law in determining her functional impairment rating.

'

Although I respect the majority's right to disagree with the holding in *Zimero*, I find it to be significant—as did the panel in *Morris*—that the Kansas Supreme Court granted a motion for publication under Supreme Court Rule 7.04(e) (2021 Kan. S. Ct. R. 46). As a result, even though *Zimero* is not binding on other panels of this court, it does serve as binding precedent that must be followed by the Workers Compensation Board. I also find the holdings in *Zimero* and its progeny to be consistent with our Supreme

19

Court's holding in *Johnson II*. Rather than creating more confusion for the Board, administrative law judges, attorneys, employers, and claimants by having conflicting published opinions from this court on the same issue, I believe we should follow the precedent established by *Zimero*.

In summary, I would conclude that the Workers Compensation Board correctly interpreted and applied the law by applying the Sixth Edition of the AMA Guides based on the date of Garcia's claimed injury. In addition, I would conclude that the Board's decision was based on evidence that is substantial when viewed in light of the record as a whole. Specifically, I would conclude that the decision reached by the Board was based on competent medical evidence—including expert testimony as well as medical records—and was consistent with the guidance provided by the Sixth Edition of the AMA Guides. Thus, I would affirm the Workers Compensation Board's decision.